Hays *vs.* The State.

(Decided 25th June, 1874.)

## SUSAN HAYS *vs.* THE STATE OF MARYLAND.

*Indictment under the Act of* 1868, *ch.* 179, *for producing an Abortion— When an Erroneous ruling by the Court below, will not Authorize a Reversal by the Appellate Court—Admissibility of Evidence.*

The Act of 1868, ch. 179, for the suppression of the crime of unlawful abortion, contains the following proviso: "Provided however, that nothing herein contained shall be construed so as to prohibit the supervision and management by a regular practitioner of medicine of all cases of abortion, occurring spontaneously, either as the result of accident, constitutional debility, or any other natural cause; or the production of abortion by a regular practitioner of medicine, when, after consulting with one or more respectable physicians, he shall be satisfied that the fœtus is dead, or that no other method will secure the safety of the mother." Two persons were jointly indicted under this Act for unlawfully producing an abortion. The indictment charged the offence to have been committed by the parties named, "not being then and there regular practitioners of medicine." On a demurrer to the indictment on the ground that it did not sufficiently negative the proviso of the statute, it was HELD:

That the indictment expressly negatived the fact that the traversers were regular practitioners of medicine, and consequently they did not come within the proviso of the Act, and were not authorized under any circumstances to cause abortion.

Hays *vs.* The State.

H. and M. were jointly indicted for producing an abortion upon R. who died from the operation. Upon the trial of H. the State offered in evidence a paper, alleged to have been handed by M. to R., directing her when she should leave home, and informing her at what point of the journey he would meet her. Up to the time this paper was offered in evidence, no evidence had been introduced to connect H. with M. or with the commission of the offence charged in the indictment; nor was the offer of the paper accompanied by an offer to follow it up with further evidence tending to prove a conspiracy or combination between M. and H. to produce an abortion upon R. Evidence was introduced, however, during the progress of the trial tending to prove that there was such conspiracy. HELD:

That the paper was inadmissible in evidence at the time it was offered, as it was not accompanied with an offer to follow it up with further proof to show the conspiracy and combination between the parties jointly indicted; but as such evidence was introduced during the progress of the cause, after which the paper would have been admissible, its admission at the particular time at which it was admitted, did the traverser no injury, and the judgment should not, in consequence of such admission, be reversed.

H. and M. having been jointly indicted for unlawfully producing an abortion on R., it is competent on the trial of H. to give in evidence the declarations of M., with reference to the condition of R. for the purpose of showing that he knew she was then pregnant, the State offering to follow up such evidence with proof of conspiracy or confederation between M. and H. to produce the abortion charged in the indictment.

Where a party is being tried for having produced an abortion upon one who at the time was an inmate of her house, it is competent to show the character of the house—that it is a house of ill-fame—in order that the jury may know whether the place is one where the crime charged, could be committed without fear of detection and punishment.

On the trial of a party for having produced an abortion, it is competent for the prosecution to give in evidence the statement made by the accused, when she was examined as a witness before the coroner's inquest, of the circumstances attending the arrival at her house of the deceased, and her sickness and death there—the accused at the time of the examination not being under arrest, and no charge having been preferred against her.

On the trial of a party charged with having produced an abortion, a physician, as witness for the defence, testified that he attended the person upon whom the abortion had been produced, at the house of the traverser, and he described her symptoms and condition, and stated that she complained of a pressing and burning in her stomach. The traverser then offered to

prove by this witness that on the occasion of his visit, beside making a personal examination of the deceased, he inquired of her symptoms and feelings, and that in reply she stated, in addition to what he had before testified to, that she started from her home for the house of the traverser, in Hagerstown, and on her way something like a lump dropped from her, and that she had been taking some stuff, and she did not know exactly what was the matter with her. On objection to this evidence by the prosecution, it was HELD:

That the statement of the deceased as to something having dropped from her on her way to Hagerstown; that she had been taking some stuff, and that she did not know what was the matter with her, was a mere narrative of what had taken place before the physician visited her, and was not admissible in evidence, either as a dying declaration or as a part of the *res gestæ.*

APPEAL from the Circuit Court for Washington County.

Susan Hays and John McCaulcy were indicted under the Act of 1868, ch. 179, as follows:

STATE OF MARYLAND,
*Washington County, to wit:*

The jurors of the State of Maryland, for the body of Washington County, do, on their oath, present that Susan Hays, late of Washington County aforesaid, white woman, and John McCauley, late of the county aforesaid, yeoman, on the first day of August, in the year of our Lord, eighteen hundred and seventy-three, at Washington County aforesaid, unlawfully and wilfully did cause to be used by Louisa Ross, then and there being a pregnant woman, a large quantity of a certain substance, medicine and noxious and poisonous drugs and preparations, to the jurors aforesaid unknown, for the purpose of causing the miscarriage and abortion of her, the said Louisa Ross, pregnant with child as aforesaid, they, the said Susan Hays and John McCauley, not being then and there regular practitioners of medicine, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Susan Hays and John McCauley, on the said first day of August, in the year eighteen hundred and seventy-three, at Washington County aforesaid, unlawfully and knowingly, did cause to be used by Louisa Ross, then and there being a pregnant woman, a certain means, to wit, the taking of a certain poison, drug, mixture, preparation and medicine to the jurors aforesaid unknown, for the purpose of causing a miscarriage and abortion upon the person of her, the said Louisa Ross, pregnant with child as aforesaid, they, the said Susan Hays and John McCauley, not being then and there regular practitioners of medicine, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Susan Hays and John McCauley, on the said first day of August, in the year eighteen hundred and seventy-three, at Washington County aforesaid, unlawfully and knowingly, did cause to be used by Louisa Ross, then and their being a pregnant woman, a certain means, to wit, the taking of a large quantity of a certain poison, drug, medicine and preparation, to the jurors aforesaid unknown, for the purpose of causing a miscarriage and abortion of the said Louisa Ross, being then and there pregnant with child as aforesaid, they, the said Susan Hays and John McCauley, not being then and there regular practitioners of medicine, supervising cases of abortion, occurring spontaneously as the result of accident, or from any natural cause, and not being regular practitioners of medicine, producing an abortion upon the said Louisa Ross, after consulting with one or more respectable physicians, and not being satisfied that the fœtus was dead, or that no other method would secure the safety of the said Louisa Ross, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

Hays *vs.* The State.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Susan Hays and John McCauley, on the said first day of August, in the year eighteen hundred and seventy-three, at Washington County aforesaid, unlawfully and knowingly, did use upon Louisa Ross, then and there being a woman pregnant with child, a certain means, to the jurors aforesaid unknown, for the purpose of causing a miscarriage and abortion of her, the said Louisa Ross, being then and there pregnant with child as aforesaid, they, the said Susan Hays and John McCauley, not then and there being regular practitioners of medicine, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

John McCauley was not taken, Susan Hays being taken, demurred to the indictment. The Court, (ALVEY and MOTTER, J.,) overruled the demurrer, and the traverser thereupon pleaded " not guilty." At the trial five exceptions were taken by the traverser; these are sufficiently set out in the opinion of this Court. The paper to the admission of which in evidence the first exception was taken, is as follows:

" *Liew,* start to Leightersburgh to-morrow at three o'clock, and I will meet you between bill Huyett's and chewsville, and I think that will be the best way for us to go. *Be shure and start at just three, so I will meet you at the rite place.*

From you *no Who.*"

The jury rendered a verdict of guilty, and the traverser appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and GRASON, J.

*Hy. Kyd Douglas*, for the appellant.

The indictment does not sufficiently negative the proviso of the Act of 1868, chap. 179, which is an amendment of the Act of 1867, chap. 185. The first, second and fourth counts charge, that the traversers were not regular practitioners of medicine, and that is all they say about the proviso. This is not sufficient, for if they had been regular physicians, it would have been no excuse, unless the other requirements set out in the proviso had been complied with.

The third count attempts to remedy the omission of the other counts, but it fails to do so. It is not quite as defective as the other three, yet it is fatally so. *Rawlings vs. The State*, 2 *Md.*, 201; *State vs. Nutwell*, 1 *Gill*, 54; *Rex vs. Jarvis*, 1 *East*, 647; *Commonwealth vs. Hart*, 2 *Criminal Lead. Cases*, 1, *and Notes*; *State vs. Bode*, 7 *Gill*, 326; *Rex vs. Pemberton*, 2 *Burr.*, 1037; *U. S. vs. Cooke*, 17 *Wall.*, 168.

But if it were not necessary to negative the proviso, the result is the same. If an indictment undertakes to recite a statute, and misrecites it, it is fatal. *Rawlings vs. State*, 2 *Md.*, 201; *Bacon's Abridgment, "Statutes."*

The paper to the admission of which in evidence, the first exception was taken, was not sufficiently identified to go to the jury for their speculations. The old lady, by whom its identity was established, could neither read nor write. This paper was found in a box, in an open, unlocked drawer, after Louisa had left home, and it went from hand to hand, not appearing how it got into the court-house.

But if it were the same piece of paper which John McCauley gave Louisa, did he write it? His name is not signed to it, and there was no attempt to prove his handwriting. It was not enough for the Court to tell the jury, that they were to consider it as evidence against Mrs. Hays, if they believed it to be the same piece of paper given by McCauley to Louisa Ross.

But conceding that the identity of the paper was established, was it admissible when offered as evidence against the appellant? It was a transaction out of her presence, and neither at that time nor ever afterwards brought to her knowledge.

The Court below said, the evidence was admissible to shew the circumstances under which she left her home, and by whom induced to leave it. But how does that reflect upon Mrs. Hays? It does not implicate her; for instead of pointing to her guilt, the paper itself shews that it was not the intention of the person who wrote that note, to take Louisa to Hagerstown, but to Leitersburg.

Could there have been any conspiracy, as was afterwards insisted upon at the trial, between McCauley and Mrs. Hays at that time? Clearly not. But if such was the supposition or theory of the State, the conspiracy should have been proved before this testimony was admitted.

At the time this paper was offered by the State and admitted, there was not only no evidence of conspiracy between McCauley and Mrs. Hays (for up to that point her name had not been mentioned,) but *there was no proffer by the State to prove such conspiracy.* And yet, with the explanation set forth in the bill of exceptions, that piece of paper, pregnant with prejudice and suspicions, was permitted to go to the jury as evidence against a party who had never heard of it. 1 *Greenl. Ev.,* sec. 111 ; 3 *Greenl. Ev.,* secs. 92, 94; 2 *Bishop's Crim. Prac.,* 190, 192; 1 *Whart. Crim. Law,* (6th *Ed.,*) secs. 696, 702, 706; 3 *Philips' Evd., Cowan & Hill's* notes, 177, *et seq.; Commonwealth vs. Crowninshield,* 10 *Pick.,* 497 ; *People vs. Parish,* 4 *Denio,* 153 ; *Clawson vs. State,* 14 *Ohio,* 234 ; *Commonwealth vs. Brown,* 14 *Gray,* 419 ; *State vs. George,* 7 *Iredell,* 321 ; *Reg. vs. Murphy,* 8 *C. & P.,* 297 ; *Reg. vs. Shellard,* 9 *C. & P.,* 277 ; 1 *Taylor's Evd.,* 527, 529 ; *Roscoe's Crim. Ev.,* 383, 387.

The testimony to the admission of which the second exception was taken, was equally objectionable. It is not

pretended that Mrs. Hays ever knew anything of this conversation, it was not shown or pretended, that she or McCauley ever knew each other at that time, or that she had then ever heard of Louisa Ross.

Up to this point, there was nothing in the case except the joint indictment, to indicate or establish a conspiracy. Nothing but assertion.

The State's attorney asked one of his witnesses "what character of house does Susan Hays keep?" to which he replied, that he knew nothing, except from general reputation, and that was, that she kept a house of ill-fame. This was an indirect effort to notify the jury as a matter of prejudice against the traverser, that she was a woman of bad character.

The only issue which the State was called upon to maintain, was that raised by the indictment, and no matter how good the previous character of the traverser may have been, it would not have saved her if the allegations of the indictment were clearly proven. Upon what principle, then, was evidence of her bad character introduced by the State as evidence in chief. She had not put it in issue and there is a long and unquestioned line of authorities which establish, that unless a defendant puts her character in issue, the prosecution cannot call witnesses to impeach it.

If a prisoner on trial offers no evidence of good character, no legal inference can arise from such omission that he is guilty of the offence charged, or that his character is bad, for the law presumes his character to be good. If then in the absence of evidence, the law presumes good character, on what principle should the State be permitted to give evidence which compels the defendant to prove what the law does not require to be proved? 1 *Taylor on Evd.*, sec. 327; 1 *Whart. Cr. Law*, 637, 639, 824; 2 *Leading Crim. Cases*, 333 and 354; 2 *Russell on Crimes*, 786; *Commonwealth vs. Webster*, 5 *Cush.*, 295; *Walker vs. Com-*

*monwealth*, 1 *Leigh*, 574; *People vs. White*, 14 *Wendell*, 111; *Dewitt vs. Greenfield*, 5 *Ohio*, 225; *Commonwealth vs. Sacket, et al.*, 22 *Pick.*, 394; *Ackley vs. The People*, 9 *Barb.*, 609; *State vs. Upham*, 38 *Maine*, 261; 3 *Greenl. Ev.*, sec. 25; *Roscoe's Crim. Ev.*, 95, and *n.*

The fourth exception was taken to the ruling of the Court in allowing the prosecution to prove by the coroner, what was the testimony of the traverser before the coroner's jury, when examined by them on oath as to the cause of the death of Louisa Ross.

Although the decisions are not uniform, it seems that the weight of authority and the weight of reasoning are against the admissibility of the evidence excepted to. 2 *Russell on Crimes*, 855, 860; *Rex vs. Smith*, 1 *Starkie*, 242; *Rex vs. Lewis*, 6 *C. & P.*, 161; *Rex vs. Wheeley*, 8 *C. & P.*, 250; *Anonymous*, 4 *C. & P.*, 255, *note*; *Rex vs. Rivers*, 7 *C. & P.*, 177; *Rex vs. Davis*, 7 *C. & P.*, 785; *Rex vs. Owen*, 9 *C. & P.*, 238.

In respect of the fifth exception. It was conceded, that it was competent to give in evidence what Louisa Ross said to the witness, Dr. Riddlemoser, as her physician, with regard to her feelings and symptoms at the time of her conversation with him. If this testimony be admissible, it is difficult to assign any sound reason for the exclusion of the proffered testimony. In examining into the condition of a patient, for the purpose of prescribing for her, is it not proper and necessary that a physician shall enquire and know not only the present feelings, pains and symptoms of his patient, but also, how she has suffered, what she has taken, what she has been doing just previous to and leading up to her sickness? Can he not enquire of her what has gone before, connected with her malady? Else, how could he treat her intelligently? And if he may do this, why is not the answer to such enquiries as much evidence as her statements with regard to what he himself may see and partially know? 1 *Greenl. Evd.*,

*sec.* 102; 1 *Phil. Evd.*, 232, 233; 1 *Whart. Criml. Law,* (*6th Ed.*,) 664; *Aveson vs. Kinnaird,* 6 *East,* 188; *Reg. vs. Johnson,* 2 *C. & K.*, 354, (61 *E. C. L. R.*;) *Bacon vs. The Inhabitants of Charlton,* 7 *Cush.*, 581; *Grey vs. Young,* 4 *McCord,* 38·; 1 *Taylor's Evd.*, *secs.* 518, 521; *Roscoe's Crim. Ev.*, 29.

But there is another ground upon which the proffered testimony was admissible. It constituted part of the *res· gestæ.* The principal and only charge under investigation was an abortion, and this testimony was closely connected with it, and threw a flood of light upon the whole transaction. It not only bore directly upon the crime charged in the indictment, but if there was an abortion, what more important evidence was offered during the trial. Was there an abortion? If so, who caused it? That was the issue involved; was not the condition of Louisa Ross, part of that issue? And how could evidence be more pertinent, or more immediately connected with the subject of enquiry?

The dying declarations of the injured, are often admitted to charge a prisoner with the crime. Ought not Mrs. Hays, in fairness and in law, to have had the benefit of the exculpatory statements of Louisa Ross on her deathbed? 1 *Greenl. Ev.*, *sec.* 108, *et seq.*; 2 *Russell on Crimes,* 750, 751; 1 *Whart. Crim. Law,* (*6th Ed.*,) 670, 680; *Commonwealth vs. Pike,* 3 *Cush.*, 181; *Barthelemy vs. The People,* 2 *Hill,* 248; *Pool vs. Bridges,* 4 *Pick,* 379; *Roulhac vs. White,* 9 *N. Car.*, 63; *State vs. Crank,* 2 *Bailey,* 66; *Kimball vs. Morrell,* 4 *Green,* 368; *Mitchum vs. State,* 11 *Georgia,* 615; *Handy vs. Johnson,* 5 *Md.*, 450; *McDowell vs. Goldsmith,* 6 *Md.*, 339; *Central Bank vs. Copeland and Wife,* 18 *Md.*, 318.

*H. H. Keedy,* for the appellee.

The ground of the demurrer is that the proviso of the statute creating the offence has not been sufficiently negatived in the indictment.

The proviso is no part of the *enacting clause,* and need not be negatived. It is a matter of defence. *State vs. Bode,* 7 *Gill,* 330; *Rawlings vs. State,* 2 *Md.,* 211; 1 *Bishop on Criminal Procedure, secs.* 378 *and* 382.

Although not necessary, yet the proviso is sufficiently negatived in the allegation contained in all the counts of the indictment, as follows: "They, the said Susan Hays and John McCauley, not then and there being regular practitioners of medicine." Whatever amounts to a substantial negative is sufficient. *State vs. Price,* 12 *Gill & John.,* 260, 262; *State vs. Keen,* 34 *Maine,* 500; *Com. vs. Roland,* 12 *Gray,* 132; 1 *Bishop on Criminal Procedure, sec.* 384.

The negation of the parties being regular practitioners of medicine covers the entire essence and substance of the proviso.

As to the first exception: There was sufficient proof of identity of the paper to be submitted to the jury with the admonition given by the Court. There was evidence tending to show that the paper produced at the trial, was the one given by McCauley to Louisa Ross. Whether the evidence was sufficient, was a matter of fact to be determined by the jury. The paper was admissible as evidence as tending to show how Louisa Ross left her home—under what circumstances—by whom induced—for what purpose—that it was her seducer who decoyed her from her father's house, under the pretence of taking her to Leitersburg, but in fact bringing her to Hagerstown, where Susan Hays lived. It was also evidence tending to show that Louisa Ross got to the appellant's house by design. The paper was also evidence of the acts and conduct of McCauley, a co-conspirator and confederate. It was also evidence tending to show an intention on the part of McCauley and Louisa Ross to produce the abortion, resorting to an artifice to conceal her whereabouts. Conspiracies are generally only proven by circumstances. 3 *Greenleaf*

*on Ev.*, secs. 93 *and* 94; *Roscoe on Crim. Evidence*, 384 *and* 385, (*side*); 2 *Wharton's Am. Crim. Law*, secs. 2,352 *and* 2,355.

The evidence objected to and the admission of which gave occasion to the second exception, shows the positive knowledge on the part of McCauley of the pregnancy of Louisa Ross. His knowledge of her condition was certainly a circumstance as *against him* in connection with the solicitation to her to leave home, and the facts developed in the subsequent period of the trial.

The acts, knowledge and declarations of one co-conspirator, whilst the conspiracy is in motion, are evidence against the others. The parties here are charged, and the record supports the charge, with a confederation to commit the crime charged; and the knowledge by McCauley of the situation of Louisa Ross, explains his subsequent as well as his previous conduct, and throws light on the connection proved in this case between him and Susan Hays. The evidence was offered with the proffer to follow it up with proof of the confederation between the parties charged.

Proof of the common purpose between the parties charged, and the knowledge of the condition of Louisa Ross by McCauley, not only explains *his* conduct, but the conduct of the appellant. It was a fact that shed light on the conduct of each. The motives, purposes, acts and conduct of McCauley, are evidence against the appellant charged with being in complicity with him in the same crime. His knowledge gives color and meaning to his acts, and these acts are evidence against the appellant. 1 *Greenl. on Ev.*, sec. 111; 3 *Greenl. on Ev.*, secs. 93, 94; *Roscoe's Crim. Ev.*, 387, 388, (*side.*)

The question as to the character of the house of the traverser, and the answer thereto, were proper and legitimate. It was certainly legitimate to prove the character of the house, and show that it was not a hotel, a boarding

house, a lying-in house, or any other kind of house for the accommodation of the sick and ailing.

But the proof tended to show that the place where the girl had been taken, was one suited for the perpetration of such a crime as is charged here. It was a fact, a circumstance that went to sustain the case; and although it affects incidentally, or in the distance, the character of the accused, yet it is not for that reason inadmissible.

A house of ill-fame would be one of the very places most fitted for the perpetration of a crime like this. Such an establishment, above all others, would be one in which a guilty party, as McCauley was, would be most likely to look for and find confederation in his unlawful purpose, and at the same time secure concealment against exposure or detection.

The character of the place where McCauley had concealed this girl, and the pursuits, occupations and habits of the owner of the house, were all involved in the question and answer objected to. There was no other mode of ascertaining the character of the house.

And the character of a house, like that of individuals, must be proved by general reputation, and can be proved only in that way. 2 *Bishop's Cr. Proc.*, (*2nd Ed.*,) *secs.* 112, 113, *and authorities there cited;* 2 *Wharton's Am. Cr. Laws,* (*7th Ed.*,) *sec.* 2,395, *b, and authorities there cited.*

The ruling of the Court to which the fourth exception was taken is wholly unexceptionable. The statements made by the appellant before the coroner's inquest, *before she was accused, and not under arrest, were admissible.* 1 *Whart. Am. Cr. Law,* (*7th Ed.*,) *sec.* 690; *Teachout vs. The People,* 41 *N. Y.,* 7; *State vs. Gilman,* 51 *Maine,* 206; *Rex vs. Tubby,* 5 *C. & P.,* 530; *Henderson vs. People,* 6 *Selden,* 13.

Her statements were voluntary; she was not under arrest, or laboring under the excitements and disturbing causes which *even an accusation* may produce.

The narratives of Louisa Ross cannot be admissible upon any principle of law. They were not dying declarations, for there is no evidence that she expected to die, and that all motive to falsify was removed. They were not expressions of her bodily or mental feelings.

Her statements, of what had taken place, were not admissible evidence, because they were the declarations of a co-conspirator, and because of the great danger of collusion. 1 *Greenl. on Ev.*, sec. 102; *Bacon vs. The Inhabitants of Charlton*, 7 *Cush.*, 581, 586; *Houliston vs. Smyth*, 2 *Car. & P.*, 22; 1 *Wharton on Crim. Law*, (7th Ed.,) sec. 50 *a, and sec.* 664 *b*.

GRASON, J., delivered the opinion of the Court.

There was a demurrer to the indictment which was overruled by the Court below, and during the progress of the trial several exceptions were taken by the appellant to the admission of evidence offered by the State, as also an exception to the ruling of the Court in refusing to permit certain declarations of Louisa Ross, offered by the appellant, to be submitted to the jury, which we shall proceed to consider in their order.

It was contended that the indictment is defective because none of the counts sufficiently negative the proviso of the Act of 1868, chap. 179, under which the indictment was framed. The proviso is in the following words: "Provided, however, that nothing herein contained shall be construed so as to prohibit the supervision and management by a regular practitioner of medicine of all cases of abortion, occurring spontaneously, either as the result of accident, constitutional debility, or any other natural cause; or the production of abortion by a regular practitioner of medicine when, after consulting with one or more respectable physicians, he shall be satisfied that the foetus is dead, or that no other method will secure the safety of the mother."

Without stopping to inquire whether, looking to the Act and its proviso, it was necessary in this case to negative the proviso, we are clearly of opinion that each count of the indictment does sufficiently negative the proviso. The Act makes it a criminal offence for any one to cause an abortion, unless it is caused by a regular practitioner of medicine, and even he is prohibited from causing it except under the circumstances particularly mentioned and described in the proviso. The indictment expressly negatives the fact, that the defendants, who were jointly indicted, were regular practitioners of medicine. It followed, therefore, as a necessary consequence, that they did not come within the proviso, and were not authorized, under any circumstances, to cause abortion. The demurrer was therefore properly overruled.

The first exception was taken to the admission in evidence of the paper found in a box in Louisa Ross' drawer, two days after she left her home at Beaver Creek. The paper was objected to on two grounds; first, because it was not sufficiently identified as the paper which was handed to her by McCauley on the 14th August; and, secondly, because no evidence had been offered, up to that stage of the trial, tending to prove a conspiracy or combination between McCauley and the appellant, and therefore no act, declaration or letter of McCauley was admissible in evidence against her, and there was no offer to follow up the introduction of this paper with further evidence to connect the appellant with the crime.

Mrs. Ross testified that she could neither read nor write, but that she saw McCauley hand Louisa Ross a piece of paper the day before she left her home, and that she put the paper in a box in her drawer, and that the Sunday after she left home, the witness found the paper, offered in evidence, in the same box and drawer into which Louisa had put it, and in which there were no other papers; that she believed it to be the same paper, which was given by

McCauley to her daughter, because it looked like it had been torn from a blank-book; that she had observed blue lines upon it, and that it had not been torn straight; that she and her husband had been the only occupants of the house in which they lived, after Louisa left, and that the latter had left home on the day designated in said paper, and had gone in the direction therein mentioned. It was further proved that Mrs. Ross, upon finding the paper, handed it to Annie Ross to read. Annie Ross then proved that the paper, so handed to and read by her, was the same paper then proposed to be offered in evidence. In connection with the offer of the said paper, the State further offered to prove that McCauley was seen with Louisa Ross, the same evening she left her home, in Hagerstown, six miles from her home. The Court admitted the paper to be read to the jury with an instruction from the Court that, if they believed it to be the same paper given by McCauley to Louisa Ross, then it was evidence tending to show the circumstances under which she left her home, and by whom induced to leave it; but that, if they were not satisfied of the identity of the paper as that given by McCauley to Louisa Ross, then they should not consider it at all. There was certainly evidence tending to prove that the paper offered was the same that was given by McCauley to Louisa Ross on the 14th August, and it was manifestly proper for the Court to submit that evidence to the jury, especially when so carefully guarded by the instruction accompanying its submission.

It does appear that, at the time this paper was submitted to the jury, no evidence had been introduced to connect the appellant with McCauley, or with the commission of the offence charged in the indictment, and it does not appear from the record, that the offer of the paper was accompanied by an offer to follow it up with further evidence, tending to prove a conspiracy or combination between McCauley and the appellant, to produce an abortion upon

Louisa Ross. If such an offer had accompanied the offer of the paper, the latter would have been properly admissible, and if the State had failed to introduce further proof tending to connect the appellant with the crime, the Court would, on motion of the appellant's counsel, have withdrawn said paper from the jury, and instructed them not to consider it in making up their verdict. The record shows however, that evidence was introduced during the progress of the trial, to prove that there was a conspiracy between McCauley and the appellant, to produce an abortion upon Louisa Ross. One of the witnesses swore, that the appellant told her in June, that she expected a girl from Beaver Creek, to arrive at her house to be operated upon, to have her baby put away, but did not state the name of the girl. It was further proved, that on the evening of the day, on which Louisa Ross left her home, she was seen in company with McCauley in Hagerstown, going in the direction of the appellant's house, and that she remained at the appellant's house until the time of her death. It further appears in proof, that McCauley went to summon a doctor to attend her at the appellant's house, that an abortion was there produced by the appellant, and that McCauley went to the house and carried the child away. All these facts were testified to, and they tended strongly to prove a conspiracy between McCauley and the appellant, and if they had been proved before the paper was offered, there can be no question that the paper would then have been legally admissible. So, as we have before said, would it have been admissible if the offer of it, had been accompanied by an offer, to follow it up with further proof to show the conspiracy and combination between the parties jointly indicted. The paper being inadmissible at the time it was offered, solely upon the ground of a want of a formal offer to follow it up with further proof, its rejection at that stage of the trial, would have only had the effect of postponing its introduction to a later stage of the trial, when the evidence of the conspiracy we have referred to,

had been introduced. As it would have been clearly admissible after the introduction of such proof, and such proof was submitted to the jury, we are of opinion that the appellant was not injured by the admission of the paper at the particular time when it was admitted, and that the judgment ought not to be reversed upon this ground.

The second exception was taken to the admission in evidence of certain declarations of McCauley in July, with reference to Louisa Ross' condition, for the purpose of showing that he knew she was then pregnant, the State offering to follow it up with proof of conspiracy, or confederation between him and the appellant, to produce the abortion as charged in the indictment. What we have said in disposing of the first exception, disposes of this also. There was no error in admitting the evidence.

The third exception was taken to the question, "What character of house does Susan Hays keep?" and the answer thereto, "from general reputation, she keeps a house of ill-fame." It had already been proved, that Louisa Ross had been an inmate of the appellant's house, that an abortion had been produced upon her at that house, and that McCauley had been seen to visit it, while Louisa Ross was there. The time, place and circumstances, at, and under, which a crime is committed, are always admissible, and proper evidence upon a criminal trial. If one entices another into a retired and secluded place, and there kills him, the character and surroundings of the place are always the subject of proof to the jury, or if one takes a girl to a house of ill-fame, and there causes an abortion to be produced upon her, the character of the house is admissible in evidence, in order that the jury may know, whether the place is one where such a crime could be committed without much danger of detection and punishment. Such evidence is not an attack upon the good character of the party charged. That

such proof may incidentally affect it, is no ground of objection to the admissibility of the evidence. We find no error in the ruling of the Court in this exception.

There is no error in the ruling of the Court in the fourth exception. After Louisa Ross' death there was a coroner's inquest, and the appellant was sworn and examined as a witness before the inquest. At that time no charge had been preferred against her, nor was she under arrest. She at that time gave an account of the circumstances attending the arrival of Louisa Ross at her house and her sickness and death there. It is always competent for the State, in trials for criminal offences, to prove that the parties charged have previously made false or contradictory statements with respect to the circumstances attending the commission of the crime and the facts bearing upon themselves. We can discover no valid objection to the introduction of such statements made by the appellant in this case.

Dr. Riddlemoser, a witness on the part of the defence, proved that he was a physician, and had attended Louisa Ross at the appellant's house, and described her symptoms and condition, and stated that she complained of a pressing and burning in the stomach ; the traverser then offered to prove by this witness that besides making a personal examination of her, he inquired her symptoms and feelings, and that, in reply, she stated, in addition to what he had before testified to, that she started from her home, on Beaver Creek, which was six or seven miles from Hagerstown, on her way to Mrs. Hays, and on her way, something like a lump dropped from her, and that she had been taking some stuff, and that she did not know exactly what was the matter with her. Upon objection made to this evidence by the State, the Court sustained the objection to that part of the offer which proposed to give the statement of Louisa Ross as to something having dropped from her on her way to Hagerstown ; that she had been taking some stuff, and that she did not know what was the matter with

her, but decided that any thing she said relating to her then condition, the seat of her pain and her description of its nature and extent, and any expression of her bodily and mental feelings, and any representation of her then existing disease or malady, were admissible.  What she stated in regard to her journey, and what happened while on her way, and that she had been taking some stuff was a mere narrative of what had taken place before the physician visited her, and was not legally admissible.  We think the ruling of the Court went to the full extent to which the rules of evidence permit the declarations of sick persons to be given to the jury.

The statement which was excluded by the Court was not admissible, as contended for by the appellant's counsel, either as a dying declaration or as *res gestæ*, and was properly rejected.

The judgment appealed from will therefore be affirmed.

*Judgment affirmed.*

(Decided 25th June, 1874.)