**UNITED STATES of America**

v.

**Milan VUITCH.**

**Crim. Nos. 1043–68, 1044–68.**

**UNITED STATES of America**

v.

**Shirley A. BOYD.**

**Crim. No. 1587–69.**

United States District Court
District of Columbia.

Nov. 10, 1969.

---

6.   Jackson v. Choate, 404 F.2d 910, 913 (5th Cir. 1968).

William H. Collins, Jr., Asst. U. S. Atty., for the United States.

Joseph Sitnick, Washington, D. C., for Vuitch.

Susan Chalker, Legal Aid Agency, for Boyd.

## MEMORANDUM OPINION

GESELL, District Judge.

These cases involve motions to dismiss indictment for abortion brought under Title 22, Sec. 201, of the D.C.Code. Vuitch is a physician licensed in the District of Columbia; Boyd is a nurse's aide. There is no relation between the two except that each defendant has moved to dismiss the indictment on the ground that the District of Columbia abortion statute is unconstitutional. The elaborate briefs, replete with authorities and background materials, have been considered, including the brief amicus of the American Civil Liberties Union. The arguments having been completed today, the Court is prepared to rule from the bench because of the public urgency of the matter.

While there have been many prosecutions under this statute over the years, there are very few decisions interpreting it and none of recent vintage. Apart from the wording of the statute itself there is no significant legislative history giving any indication of the underlying congressional intent, either at the time of enactment or subsequent amendment. As far as can be ascertained, this is the first constitutional challenge of the statute and the issues presented in these motions have not been decided in this jurisdiction. The Court has taken judicial notice of the materials cited in the briefs but they are of such common understanding that they need not be elaborated here in any detail.

The statute in question was originally enacted as part of the District of Columbia Code of 1901 and thereafter re-enacted with only slight modification. It provides in pertinent part:

"Whoever * * * produce[s] an abortion * * * on any woman, unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine, shall be imprisoned * *."

A felony penalty of from one to ten years is provided.

Basically the motions attack the statute for vagueness, allege that its practical operation denies equal protection to certain economic and other groups subject to its sanctions and assert a constitutional right of all women, regardless of their circumstances, to determine whether or not they shall bear a child. Constitutional doctrines of recent evolution are referred to by analogy to reinforce the motions.

The statute does not prohibit all abortions. An abortion is permitted where done "as necessary for the preservation of the mother's life or health" and "under the direction of a competent licensed practitioner of medicine." This two-partite exception clearly points up a basic congressional concern with what may broadly be said to be medical factors. The Court has a duty to interpret the statute in a manner consistent with the apparent congressional intent. As the briefs and arguments have emphasized, there are still many health or

medical problems created by the varying conditions under which abortions are performed. While there have been many advances in medical knowledge and techniques since 1901, there is nothing before the Court which establishes that abortions may be safely and hygienically performed at various stages of pregnancy except under medical direction. Indeed there is ample evidence, and the parties so assert, that infection and death still often attend clumsy, unskilled terminations of pregnancy performed by non-physicians.

■ Under these circumstances, it was and still is well within the police power of the Congress to outlaw abortions that are not performed under a "competent", that is, a qualified, licensed, practitioner of medicine.

■ The true crux of the controversy here concerns the other part of the exception—"as necessary for the preservation of the mother's life or health." It is suggested that these words are not precise; that, as interpreted, they improperly limit the physician in carrying out his professional responsibilities; and that they interfere with a woman's right to avoid childbirth for any reason. The word "health" is not defined and in fact remains so vague in its interpretation and the practice under the act that there is no indication whether it includes varying degrees of mental as well as physical health. While the law generally has been careful not to interfere with medical judgment of competent physicians in treatment of individual patients, the physician in this instance is placed in a particularly unconscionable position under the conflicting and inadequate interpretations of the D.C. abortion statute now prevailing. The Court of Appeals established by such early cases as Peckham v. United States, 96 U.S.App.D.C. 312, 226 F.2d 34 (1955), cert. denied 350 U.S. 912, 76 S.Ct. 195, 100 L.Ed. 800, and Williams v. United States, 78 U.S.App. D.C. 147, 138 F.2d 81, 153 A.L.R. 1213 (1943), that upon the Government establishing that a physician committed an abortion, the burden shifted to the physician to justify his acts. In other words, he is presumed guilty and remains so unless a jury can be persuaded that his acts were necessary for the preservation of the woman's life or health. These holdings, which may well offend the Fifth Amendment of the Constitution, as interpreted in recent decisions such as Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), also emphasize the lack of necessary precision in this criminal statute. The jury's acceptance or nonacceptance of an individual doctor's interpretation of the ambivalent and uncertain word "health" should not determine whether he stands convicted of a felony, facing ten years' imprisonment. His professional judgment made in good faith should not be challenged. There is no clear standard to guide either the doctor, the jury or the Court. No body of medical knowledge delineates what degree of mental or physical health or combination of the two is required to make an abortion conducted by a competent physician legal or illegal under the Code. Other uncertainties in the phrase "as necessary for the preservation of the mother's life or health" are discussed and documented in People v. Belous, Cal., 80 Cal.Rptr. 354, 458 P.2d 194 (1969), and need not be repeated here.

Thus the phrase under discussion will not withstand attack for it fails to give that certainty which due process of law considers essential in a criminal statute. Its many ambiguities are particularly subject to criticism for the statute unquestionably impinges to an appreciable extent on significant constitutional rights of individuals.

At common law abortion prior to quickening was not an offense. In fact, abortion did not become a statutory crime in the United States until about 1830. It has repeatedly been held, even under the D.C. statute, that the woman who aborts commits no offense. Thompson v. United States, 30 App.D.C. 352

(1908). There has been, moreover, an increasing indication in decisions of the Supreme Court of the United States that as a secular matter a woman's liberty and right of privacy extends to family, marriage and sex matters and may well include the right to remove an unwanted child at least in early stages of pregnancy. Griswold v. State of Conn., 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010 (1967). Matters have certainly reached a point where a sound, informed interest of the state must affirmatively appear before the state infringes unduly on such rights. The abortion debate covers a wide spectrum of considerations: moral, ethical, social, economic, legal, political and humanitarian, as well as medical. (*See* Abortion, Tietze & Lewit, Scientific American, January, 1969, Vol. 220, No. 1). But it does not appear to what extent Congress has weighed these matters in establishing abortion policy for the District of Columbia beyond an expression of a clear necessity of placing the matter in the hands of competent doctors.

■ The question is next presented whether the statute is severable, that is, whether it may be read as outlawing abortions except when performed under the direction of a competent physician, eliminating only the preservation-of-life-or-health standard. Boyd, a nonphysician, urges that because of the vagueness of the life-and-health phrase, the entire statute must fall. The Court, concludes otherwise. The statute still protects a proper legislative and separate legislative objective if the one factor is stricken and the other allowed to remain. The Court is satisfied that the statute is severable, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), Stewart v. Washington, D.C., 301 F.Supp. 610 (1969), and holds that Congress has constitutionally required that abortions be undertaken only under the direction of a competent physician. Title 2-102, 130 of the D.C.Code governing licensing of the healing arts

is not sufficient to protect the congressional purpose of limiting abortions to competent physicians. Even if the Court accepts Boyd's claim to standing under liberal criteria of such cases as Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), her challenge fails because the statute is severable.

■ Boyd's further contention that the statute discriminates against the poor and in its present operation denies medical help in city hospitals but is more liberally applied in some private hospitals has considerable support in the sketchy statistics and other data presented. The statute has received differing interpretations in the hospitals. In the light of the Court's ruling, however, there is no reason why the statute cannot henceforth be evenly applied throughout the city in a way which removes the principal basis for existing uncertainty and confusion. National and local policy provides free medical care for the poor. It is legally proper and indeed imperative that uniform medical abortion services be provided all segments of the population, the poor as well as the rich. Principles of equal protection under our Constitution require that policies in our public hospitals be liberalized immediately. Other contentions advanced by Boyd are without merit in view of the rulings made.

■ The Court cannot legislate. A far more scientific and appropriate statute could undoubtedly be framed than what remains of the 1901 legislation. The asserted constitutional right of privacy, here the unqualified right to refuse to bear children, has limitations. Congress can undoubtedly regulate abortion practice in many ways, perhaps even establishing different standards at various phases of pregnancy, if informed legislative findings were made after a modern review of the medical, social and constitutional problems presented. The Court ventures the suggestion that Con-

gress should re-examine the statute promptly in the light of current conditions.

The motion of Dr. Milan Vuitch in both cases is granted as to him only. The motion of Shirley A. Boyd is denied. These remarks shall constitute the Court's opinion when transcribed. A prompt appeal to the United States Supreme Court under 18 U.S.C. § 3731 is highly desirable.

Counsel shall submit an appropriate order promptly.