## Commonwealth v. Page

*Charles C. Brown, Jr.,* District Attorney for Commonwealth.

*Francis A. Searer,* for defendant.

CAMPBELL, P. J., July 23, 1970.—On October 21, 1968, defendant, a motorcycle mechanic who acquired his expertise in the Merchant Marines, entered a plea of guilty to a charge that he aborted two unmarried pregnant women. He was sentenced to the State penitentiary for a term of two to five years.

The Act of June 24, 1939, P. L. 872, sec. 718, 18 PS §4718, was the statutory basis for the prosecution. It is a "broad brush" statute prohibiting all abortions without exception within the State of Pennsylvania.

On March 4, 1970, defendant filed a PCHA petition alleging that the aforesaid abortion statute is unconstitutional in that it violates the Constitutions of Pennsylvania and the United States.

## THE SOCIAL PROBLEM

The problem of abortion is a matter of great current concern in the United States. Aside from the moral and religious issues involved, the resulting social implications and effects are great. The Kinsey group have estimated that one out of every five pregnancies in the United States end in abortion. The annual take by nonprofessional abortionists has been estimated to be over $350,000,000 a year and is thought to be the third largest illegal endeavor in the United States, exceeded only by gambling and narcotics.[1] It has further been estimated that over 5,000 women die each year from criminal abortions.[2] As a result of the enormous resulting problems, abortion statutes are being subjected to critical review.

## STATE'S COMPELLING INTEREST

The Commonwealth is aided by the presumption in favor of the constitutionality of the statute. Aside from this presumption, courts have traditionally upheld the constitutionality of State legislation if it can establish an overriding legitimate legislative purpose to justify the interference with individual and family privacy. Thus, the real question, as stated in People

---

[1] D. Lowe, Abortion and the Law, 3-5 (1966).
[2] Bates and Zawadzki, Criminal Abortion, 3-4 (1964).

v. Belous, 71 Cal. 2d 954, 80 Cal. Rep. 354, 458 P. 2d 194 (1969), was not "whether the right exists but whether the state has a compelling interest in the regulation of the subject which is within the police power of the state."

What is the State's compelling interest in the abortion statute? Is it to discourage fornication and other illicit sexual conduct? If so, why does the statute apply to both married and unmarried women?

Is the State s compelling interest the desire to preserve the health and welfare of women? Why, then, does it apply in bold fiat to medical doctors who possess the requisite skill to easily perform a safe abortion during at least the first trimester of pregnancy? There is abundant medical opinion that it is safer for a woman to have a hospital therapeutic abortion than to bear a child.

Is the State's compelling interest the desire to protect the rights of the fetus? The fourteenth amendment to the United States Constitution requires that the State accord "due process of law" and "equal protection of the laws" to *any person* within their respective jurisdiction and that all *persons born or naturalized* in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. (Italics supplied.) We know of no court which has construed the early development of the fetus as being a person within the meaning of the fourteenth amendment and, on the contrary, believe that it is generally only applicable at birth. The protection of the embryo and fetus does not justify an abortion statute: People v. Belous, supra.

We can readily perceive of a valid compelling interest of the State in the subject of abortion if it were directed, for example, to prevent an unquali-

fied, unlicensed and untrained individual to perform an abortion, which medically would jeopardize the health and safety of the woman involved but, in order to accomplish the result in which the State is interested, the statute must be sufficiently narrow in scope to serve the limited purpose involved: McLaughlin v. Florida, 379 U. S. 184, 85 S. Ct. 283 (1964); Shelton v. Tucker, 364 U. S. 479, 5 L. Ed. 2d 231 (1960).

We flatly hold that the Pennsylvania statute does not meet this standard because of its broad, unlimited and indiscriminate application.

## RIGHT TO MARITAL AND PERSONAL PRIVACY

We pass now to the question of whether or not the abortion statute violates the woman's fundamental right to personal privacy and, likewise, the fundamental right to marital privacy.

The Supreme Court of the United States has shown a marked concern with regard to legislative interference in the marital relationship, the individual's right to bear children and to be free from unwarranted invasion upon one's right to privacy. The genesis of such a stance may be seen in such cases as Griswold v. Connecticut, 381 U. S. 479, 14 L. Ed. 2d 510 (1965) (upholding the right to distribute and use prefertilization contraceptive devices); Loving v. Virginia, 388 U. S. 1, 18 L. Ed. 2d 1010 (1967) (holding a statute prohibiting interracial marriage violative of the due process clause); Skinner v. Oklahoma, 316 U. S. 535, 86 L. Ed. 1655 (1942) (holding a sterilization law illegal and finding the right to procreation a "basic liberty").

In these and other cases, the court has recognized a constitutionally protected right to privacy which

is made applicable to the States through the fourteenth amendment to the United States Constitution.

We believe the rationale of the case of Griswold v. Connecticut, supra, is applicable and may be extended to abortive action after conception and that the abortion statute interferes with the individual's private right to have or not to have children. Both the Pennsylvania and Connecticut statutes are at odds with current medical practice, both invade the intimate realm of marital privacy, both interfere with a married couple's freedom to control the number and spacing of offspring, and both are in conflict with a solution to one of the world's critical problems, the population explosion.

The United States District Court in United States v. Vuitch, 305 F. Supp. 1032 (1969), and the Supreme Court of California in People v. Belous, supra, have each declared an abortion statute unconstitutional. Although these statutes were factually dissimilar to the statute here in question, the rationale we believe to be applicable in many respects.

The United States District Court for the Eastern District of Wisconsin has declared a State abortion statute unconstitutional as violating a pregnant woman's ninth amendment right of privacy: Babbitz v. McCann, 310 F. Supp. 293, decided March 5, 1970. In this case, a Wisconsin physician was charged with aborting an unquickened fetus.

We are convinced that the Pennsylvania abortion statute clearly impinges on constitutionally protected areas and without a doubt it is so broad, unlimited and indiscriminate that it fails to meet the present-day tests for constitutionality.

## CONCLUSION

We sincerely regret that the question of the constitutionality of this statute should reach this court in

its present posture. The reprehensible actions of defendant are in no way approved or condoned by the language contained herein or the court's decision. The only solace one can gather is the fact that this very statute created the undesirable situation involved in this case and that the legislature may hasten to adopt an abortion statute to meet the needs of present-day society. Defendant's petition is, therefore, granted and defendant ordered discharged.

## SUPPLEMENTAL OPINION

CAMPBELL, P. J., September 21, 1970.—Although not briefed and argued before this court, we desire to assign yet an additional reason why the Act of June 24, 1939, P. L. 872, sec. 718, 18 PS §4718, is in our opinion unconstitutional. We believe the act to be so vague, uncertain and ambiguous that it fails to meet the requirements of due process. The act says:

"Whoever, with intent to procure the miscarriage of any woman, *unlawfully* administers . . . or *unlawfully* uses any instrument . . . is guilty of felony . . ." (Italics supplied.)

Does this mean that one can procure a miscarriage by lawfully administering a poison or drug or lawfully using an instrument? If so, when is an abortion lawful and when is it unlawful? To the memory of this court, licensed physicians, as well as unqualified butchers, have been convicted of the crime of abortion.

The act has been enforced as though every abortion were unlawful, yet there has developed in recent years the common belief in Pennsylvania that therapeutic abortions are legal. We find no standards whatsoever to make a determination as to what is a legal and what is an illegal abortion. Are we to leave the individual doctor to guess at his peril whether he can or cannot be constitutionally punished for violation of the stat-

18

ute? We call the appellate court's attention to the able note of Anthony G. Amsterdam in 109 University of Pennsylvania Law Review, p. 67 (1960).

We believe the Commonwealth should be required to answer one simple question, is there such a thing as a lawful abortion in Pennsylvania? If the Commonwealth's answer is "no," why was the word *unlawfully* used twice in the abortion statute and what meaning can you ascribe to it? If the Commonwealth's answer is "yes," the Commonwealth should indicate the difference between a lawful and an unlawful abortion and point to the specific language in the statute which sets forth this distinction.

The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, the underlying principle being that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed: United States v. Harriss, 347 U. S. 612 (1954); Connally v. General Construction Company, 269 U. S. 385 (1926); Lanzetta v. New Jersey, 306 U. S. 451 (1939).

We again call the parties' attention to the fact that the language "done as necessary for the preservation of the mother's life or health and under direction of a competent licensed practitioner of medicine" was held unconstitutionally vague by the United States District Court for the District of Columbia (United States v. Vuitch 305 F. Supp. 1032 (1969)); also, the language "unless same is necessary to preserve her life" as found in the California statute is likewise unconstitutionally vague: People v. Belous, 71 Cal. 2d 954, 458 P. 2d. 194 (1969).

We, therefore, hold that the abortion statute is void for vagueness, indefiniteness and ambiguity on its face.