WOODROW WILSON LASHLEY, SR. AND CLAIRE ANITA RYZA *v.* STATE OF MARYLAND

[No. 336, September Term, 1969.]

*Decided August 11, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph S. Kaufman,* with whom were *Francis S. Brocato, John W. T. Webb,* and *Isaac M. Neuberger* on the brief, for appellants.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Alfred T. Truitt, Jr., State's Attorney for Wicomico County,* and *Richard J. Kinlein, State's Attorney for Howard County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellants Lashley and Ryza were convicted at a court trial under criminal informations charging that on November 17, 1967 they committed two illegal abortions, engaged in the commission of three conspiracies to commit abortion and practiced medicine without a license. On appeal it is contended (a) that the search warrant under which incriminating evidence was seized from the appellants was issued without probable cause, and (b) that the statute under which the substantive counts of abortion were brought—Maryland Code, Article 27, Section 3 (now repealed)—was unconstitutional.[1]

At the trial evidence was adduced showing that on November 17, 1967 the police, armed with a search warrant, entered the premises at 6114 Lawyers Hill Road in Howard County and arrested the appellants, both of whom were occupying the premises under false names; that tangible evidence was there seized showing that abortions were being performed on the premises; that there was evidence showing that two abortions had been performed that day by the appellants; and that three other pregnant girls had been brought to the premises to have abortions performed by appellants. The evidence showed that neither appellant had a license to practice medicine.

## I

It is the firmly established law of Maryland that the presence or absence of probable cause to support a search

---

1. Section 3 was repealed by Chapter 470 of the Acts of 1968. The repealing Act, now codified as Sections 149E-149G, inclusive, of Article 43, enacted a new abortion statute, it being expressly provided that nothing in the new Act "applies to or affects the prosecution or penalty for, any event or occurrence prior to the effective date of this Act."

warrant must be determined solely from the sworn allegations of the application for the warrant. *Tucker v. State,* 244 Md. 488; *Scarborough v. State,* 3 Md. App. 208. The application for the search warrant in the present case—some fifteen typewritten pages in length — was signed and sworn to by three officers of the Maryland State Police. It recited their belief that the laws relating to the commission of illegal abortions were being violated upon the premises at 6114 Lawyers Hill Road. It was stated in the affidavit that information had been received by one of the affiants in October of 1967 "from a confidential source, who has supplied him with reliable information in the past," that appellants were performing illegal abortions on Lawyers Hill Road. As a result of this information, the affiants stated that a police investigation was conducted which showed that Lashley had been convicted of committing an illegal abortion in 1958 in Virginia; that both Lashley and Ryza had been arrested in 1962 for violating the abortion laws in the District of Columbia and, while neither was convicted, police records in that jurisdiction indicated that Lashley's fingerprints had been found on the equipment used to conduct the illegal abortions; that further investigation revealed that the telephone listed for 6114 Lawyers Hill Road was in the name of Robert Wright; that the owner of 6114 advised the affiants that he had leased the premises to Wright and his wife in November of 1966; that the owner identified a photograph of Ryza as Mrs. Wright; that the owner was shown a photograph which police had obtained of Robert Wright and he stated that Wright was not the man who rented the premises from him; that investigation revealed that Lashley and Ryza resided in Charles County, Maryland; and that the neighbor next to 6114 stated that he saw no indication that 6114 was being used as a dwelling. The affidavit then recited the results of a police surveillance of 6114 conducted from November 2, 1967 through November 12. In general, the recitations in the affidavit showed that Lashley and Ryza were ob-

served on the premises; that on November 3, 7, and 10, a total of sixteen females arrived in various motor vehicles, all of which, in one way or another, were connected with Lashley and/or Ryza; that the girls were accompanied to the door of 6114 by their driver, after which the driver departed and the girls entered the premises; that the girls left the premises the same day by the same vehicle that brought them; that on the days when no girls were observed entering 6114, there was no activity on the premises, although lights were observed within the house. The affidavit concluded by alleging that the affiants had a total of twenty-two years police experience and that based on this experience, they believed the actions which they observed were not consistent with the maintenance of a dwelling house but were consistent with the use of the premises to conduct illegal abortions.

Only the probability and not a *prima facie* showing of criminal activity is the standard of probable cause. *Beck v. Ohio,* 379 U.S. 89; *Cornish v. State,* 6 Md. App. 167. Evidence sufficient for conviction is thus not required. *Grimm v. State,* 6 Md. App. 321. The legal principles determinative of the question whether probable cause is shown by the application for a search warrant are so well settled as to require no elaboration of their import. *See Spinelli v. United States,* 391 U.S. 933; *Henderson v. State,* 243 Md. 342; *Henson v. State,* 236 Md. 518; *Silbert v. State,* 10 Md. App. 56; *Price v. State,* 7 Md. App. 131; *Hall v. State,* 5 Md. App. 394; *Frey v. State,* 3 Md. App. 38. While an undisclosed informer's reliability is obviously not established by the affiants' mere unsupported and unparticularized conclusory assertion that the informer has supplied reliable information in the past, *Iannone v. State,* 10 Md. App. 81, where, as here, the information provided by the informer's tip is substantially corroborated by independent police work undertaken by the affiants, we think the informer's tip, together with the other allegations in the warrant, may be collectively considered in determining whether probable cause exists for the issuance of the warrant. *See Spinelli v. United States,*

*supra; Iannone v. State, supra; Price v. State, supra.* Of course, when a search is based upon a magistrate's, rather than a police officer's prior determination of probable cause, the reviewing courts will accept evidence of a less judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant. *Aguilar v. Texas,* 378 U. S. 108; *Jones v. United States,* 362 U. S. 257. Equally well settled is the principle that the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. *United States v. Ventresca,* 380 U. S. 102; *Tucker v. State, supra.* Within this constitutional framework, we conclude that the search warrant was validly obtained and that the evidence thereunder seized was properly admitted at the trial.

## II

Appellants contend that Article 27, Section 3 is unconstitutional because it is vague and uncertain in its application.

Prior to its repeal in 1968, Section 3 provided that it was a misdemeanor for any person, *inter alia,*

> "* * *knowingly [to] sell, or cause to be sold any * * * poison, drug, mixture, preparation, medicine or noxious thing or instrument of any kind whatever [for the purpose of producing abortion]; or from whom any advice, direction, information or knowledge may be obtained for the purpose of causing the miscarriage or abortion of any woman pregnant with child, at any period of her pregnancy, or shall knowingly sell or cause to be sold any medicine, or who shall knowingly use or cause to be used any means whatsoever for that purpose, shall be punished * * *; provided, however, that nothing herein contained shall be construed so as to prohibit the supervision and management by a regular practitioner of medicine of all cases of abortion occurring spontaneously, either as the result of

accident, constitutional debility, or any other natural cause, or the production of abortion by a regular practitioner of medicine when, after consulting with one or more respectable physicians, he shall be satisfied that the foetus is dead, or that no other method will secure the safety of the mother."

The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed of what State law commands or forbids; consequently, a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Lanzetta v. New Jersey*, 306 U. S. 451; *Connally v. General Construction Co.*, 269 U. S. 385.

In *Roeder v. State*, 4 Md. App. 705, 709, we held that the nature of the activity proscribed by Section 3 "is clearly any specified effort knowingly directed at the causation or procurement of a miscarriage or abortion of any woman, pregnant with child, at any period of her pregnancy, excluding that legally condoned exercise by a medical practitioner." To like effect, *see Hays v. State*, 40 Md. 633. We think it altogether clear from the express terms of Section 3, as well as from the cases, that the production of abortion under the statute is plainly restricted to practitioners of medicine when, after consulting at least one other physician, the physician is satisfied that the fetus is dead, or, if alive, "that no other method will secure the safety of the mother." We thus find no merit in appellants' contention that the statute failed to give them fair notice that, as non-physicians, they were prohibited from performing abortions under any circumstances. That it is within the police power of the State to outlaw the commission of abortions that are not performed by

qualified physicians is, we think, beyond question. *See Babbitz v. McCann,* 310 F. Supp. 293 (D.C. E.D.) ; *United States v. Vuitch,* 305 F. Supp. 1032 (D.C. D.C.).[2]

Appellants particularly urge that the proviso in Section 3, permitting therapeutic abortions by medical doctors is so vague and indefinite as to violate due process in that it does not give fair notice of what acts will be punished. For this proposition appellants rely primarily on *Roe v. Wade,* F. Supp. (D.C. N.D. Tex.) ; *People v. Belous,* 458 P. 2d 194 (S.Ct. Cal.) ; *Babbitz v. McCann, supra,* and *United States v. Vuitch, supra.* On the authority of the same cases and on *Griswold v. Connecticut,* 381 U. S. 479, appellants also claim that Section 3 is unconstitutional because it interferes with the woman's right to avoid childbirth for any reason she may choose.[3] We do not reach the merits of either contention. Ordinarily, a person has no standing in court to vindicate the constitutional rights of others. *Griswold v. Connecticut, supra; Barrows v. Jackson,* 346 U. S. 249. In *State v. Cherry,* 224 Md. 144, 155, the Court of Appeals noted that while, as a general rule in criminal prosecu-

---

2. In *Vuitch,* the Court said (p. 1034) :
"* * *While there have been many advances in medical knowledge and techniques since 1901, there is nothing before the Court which establishes that abortions may be safely and hygienically performed at various stages of pregnancy except under medical direction. Indeed there is ample evidence, and the parties so assert, that infection and death still often attend clumsy, unskilled terminations of pregnancy performed by non-physicians."

3. In *Roe,* a three-judge court declared restrictions limiting medical abortions to "saving the life of the mother" to be vague, overbroad, and unnecessary State restrictions on the Ninth Amendment right of women to choose whether to have children. In *Belous,* the court found that a similar restriction placed upon medical judgment was too uncertain to satisfy due process requirements and at the same time protect the fundamental constitutional rights of the mother. In *Babbitz,* a similar restriction was deemed an unconstitutional infringement upon a woman's constitutional rights under the Ninth Amendment. In *Vuitch,* the court held that a restriction limiting medical abortions to those necessary "for the preservation of the mother's life and health" was unconstitutionally vague. In *Griswold,* the Supreme Court held that there were fundamental constitutional rights arising out of the family and home situation, involving marriage and sex, which could not be arbitrarily restricted by State action.

tions, the accused has the right to assert the invalidity of the law under which he is being prosecuted, he must show that his rights are adversely affected by the statute and more particularly that his rights are thus affected by the particular feature of the statute alleged to be in conflict with the constitution, it not being sufficient that the statute may impair the rights of others. To like effect, see Brown v. State, 177 Md. 321; Crouse v. State, 130 Md. 364; Parker v. State, 99 Md. 189. Appellants are neither physicians nor women seeking to assert an allegedly endangered constitutional right to avoid childbirth. Appellants do not assert how, as non-physicians, the statute inflicts an unconstitutional injury upon any particular constitutionally protected interest of theirs, it not being alleged that limiting the production of abortions to medical doctors is a violation of their constitutional rights. Indeed, the abortionist would seem to be the least likely advocate of a claim to more liberality for licensed practitioners of medicine to produce abortions. We hold that appellants lack standing to attack as unconstitutional on due process grounds the proviso in Section 3 governing abortions by licensed physicians. Nor do we think the appellants stand in such a confidential and/or professional relationship to their "clientele" as would invest them with standing under Griswold to assert the woman's right to abort a pending birth. The relationship of the abortionist to his "client" is hardly a professional one entailing continued confidence and consultation; rather, it is one of furtive and clandestine contact with the abortionist's interest in his client's welfare secondary to his own interest in avoiding detection.[4]

> *Judgments affirmed; appellants to pay costs.*

---

4. Even if appellants had standing to attack the medical proviso in Section 3, and it was held vague and indefinite, or they had standing to assert the woman's right to privacy, and it was held that the statute was overbroad in restricting such right, we think the provisions of the statute would nevertheless be considered severable, viz., that it would properly bear interpretation as still outlawing abortions except when performed under the direction of competent physicians. See United States v. Vuitch, supra.