Essex County Court of Oyer and Terminer.

STATE OF NEW JERSEY v. OSCAR ARNOLD LARSON.

Decided February 5, 1932.

For the state, *Joseph L. Smith,* prosecutor (*Joseph E. Conlon*).

For the defendant, *Biro & Strell.*

HARTSHORNE, J. This defendant was indicted for violation of the rules and regulations of the state aviation commission. He moves to quash, on the ground, among others, that the State Aviation act (*Pamph. L.* 1931, *ch.* 190, *p.* 475), creating the state aviation commission and purporting to control the entire conduct of intrastate aviation, is unconstitutional.

The other objections may be shortly disposed of. The objection that the indictment is insufficient for uncertainty and similar technical defects may be dismissed since, under well settled practice, a bill of particulars may be demanded.

The objection that the State of New Jersey is improperly a party to the indictment is based upon the provision in the act, section 9, that "prosecution therefor [a violation of the act] *may* be instituted in the name of the commission or the director either by the attorney-general or by the prosecutor of the pleas in and for the county in which the offense is alleged to have been committed, when so directed by the attorney-general." The indictment in question does not accord with the above method of procedure. But the above method is permissive not mandatory. Its obvious purpose is to give to the state aviation commission, as the body most interested in the enforcement of the act, the power to enforce it on its own initiative. This in no way prevents the use of the usual methods of enforcement through grand jury proceedings. The indictment in question is properly found in the usual form.

We now pass to the important objection leveled at the indictment, *i. e.*, the unconstitutionality of the State Aviation act.

As above stated, the indictment charges the violation of the rules and regulations of the commission. In section 1 of the act its "purpose" is set forth. Assuming for the sake of argument that this is more than a mere preamble, this purpose is stated to be (1) "for the regulation of air craft in and over this state;" (2) "to require that [such] aircraft * * * shall conform in respect to design, construction, and air-worthiness, to the standards prescribed by the United States government," and (3) "to require the licensing of aircraft and airmen." Clearly such provisions fix no standard whatever, even of the most general nature, either for the regulation of aircraft or the licensing of aircraft or airmen. They state a standard only for the physical character of aircraft, such standard to be that fixed by the federal government.

The only further provisions in that regard are those found in section 7 of the act, which provides that the commission "may establish and revise from time to time air traffic rules for the navigation, protection and identification of aircraft,

which shall conform to and coincide with, in so far as practicable, the [federal] Air Commerce act of one thousand nine hundred and twenty-six and all acts amendatory thereof and supplementary thereto and not inconsistent with the provisions of this act. It may establish standards of airworthiness for aircraft," to accord with such federal act. "It may encourage and effect, in so far as practicable, uniform field rules for airports." By section 9 of the act it is provided that "any person who violates any of the provisions of this act or any rule or regulation thereunder shall be guilty of a misdemeanor."

It is clear from all the above provisions that as to the "navigation, protection, and identification of aircraft" and their "air-worthiness," the only standard fixed by the legislature is that of the federal act, and that no standard of any nature whatever is fixed for the "uniform field rules for airports." As to these latter, the act itself would support any uniform regulation whatever, no matter how absurd or unjust, which the commission might adopt in their sole discretion.

The substantial question therefore is, whether the New Jersey legislature is permitted by the constitution of this state and that of the United States, to convict a person of a crime, when it has fixed no standard of conduct to be conformed to by the citizen, but has left that standard to be fixed by the regulations of a subordinate administrative authority, either in its untrammeled discretion, or to conform substantially to the legislation of another sovereignty, such legislation being referred to in the act, but not incorporated therein.

Our form of government, both federal and state, is based upon the fundamental concept of the separation of the powers, legislative, executive, and judicial. Each of these three branches can exercise its own power only. This is expressly set forth in our state constitution, which provides that "the legislative power shall be vested in a senate and general assembly." Article 4, section 1, subsection 1. The only exception to this is in the case of municipal corporations,

which from time immemorial have been authorized to exercise legislative functions at common law, such common law rule and historical fact, being deemed a condition implied in the constitution. Otherwise, however, no legislative function can be delegated by our senate and general assembly.

But, while the establishment of principles or standards of conduct is the essential function of the law-making body, which cannot be delegated, the application of those principles or standards, to facts as they arise, and the determination as to whether or not those facts exist, is a function of law enforcement, which can, therefore, be delegated to an administrative body. This distinction is well brought out in the leading case of *Field* v. *Clark,* 143 *U. S.* 649, where the court says, "the legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." See further the comparatively recent case of *Hampton & Co.* v. *United States,* 276 *U. S.* 394, which collates the authorities generally in this regard. Accordingly, congress in exercising legislative control over interstate carriers by the fixing of general principles can yet delegate fact finding and law enforcing, *i. e.,* rate-making, power, to the interstate commerce commission. *Interstate Commerce Commission* v. *Illinois Central Railroad,* 215 *U. S.* 452. So again the State of New Jersey can delegate rate-making power to the state public utility commission. *West Jersey and Seashore Railroad* v. *Public Utilities Commission,* 87 *N. J. L.* 170. A delegation of power over transportation by air can, of course, be made similar to that over transportation by land or water.

But this is exactly what the State Aviation act fails to do. As seen above, it fixes no criterion whatever to be adhered to by the state aviation commission in establishing its regulations for "uniform field rules." In authorizing such regulations it therefore violates the fundamental concept of our constitutional law as to the separation of the powers. It may well violate also the due process clause of the fourteenth amendment to the federal constitution, since it creates a

crime, without setting up any ascertainable standard of conduct for the citizens to conform to. *United States* v. *Cohen Grocery Co., 255 U. S.* 81.

Finally, as to any regulations of the commission, "for the navigation, protection, and identification of aircraft," and to "establish standards of air-worthiness for aircraft," the standard fixed is that of the Federal Air Commerce act of 1926, its amendments and supplements. It may well be a sound exercise of legislative discretion to have the regulations for the conduct of a matter, so oblivious of artificial land boundaries as aviation, substantially identic for both intrastate and interstate commerce. Nor is there anything unconstitutional in the state's adopting as its own the federal policy. The converse has been repeatedly sustained. *Clark Co.* v. *Western Maryland Railroad, 242 U. S.* 311.

But that is not the point. The point is whether the method adopted by the legislature to achieve this purpose conforms to constitutional mandates. Had the legislature incorporated in the state act the desired provisions of the federal act in the above regard, it might well be that it would have sufficiently fixed a standard to which an administrative commission could adhere in finding facts and enforcing regulations. Such was apparently done in the Ohio Aviation act referred to in the recent case of *Swetland* v. *Curtiss Airports Corp., 41 Fed. Rep.* (2) 929, 940 (reversed on another ground December 30th, 1931, opinion not yet reported). But that the legislature of this state has not done. It has attempted to make applicable to the state act the existing federal act, without inserting the appropriate provisions in the state act. This at once raises the question whether it has not violated the provision of the New Jersey constitution that "no act shall be passed which shall provide that any existing law or any part thereof shall be made or deemed a part of the act, or which shall enact that any existing law or any part thereof shall be applicable, except by inserting it in such act." Article 4, section 7, subsection (4). This provision was incorporated in the constitution to avoid misunderstanding, if not fraud, in enacting legislation.

But this provision does not require in each and every instance that an act referred to should be incorporated in full in the new act. The true construction of such constitutional provision has been settled by the court of this state to be that "if the expressions in the given act of reference to antecedent laws may be struck out or eliminated without altering or impairing the effect of the law in which they are found, such references are harmless and can possess no invalidating force." *State* v. *Hancock,* 54 *N. J. L.* 393; 24 *Atl. Rep.* 726; *Campbell* v. *Board of Pharmacy,* 45 *N. J. L.* 241; *affirmed,* 47 *Id.* 347.

Applying this rule, if we strike out from the State Aviation act its reference to the federal act, we at once find ourselves with an attempted delegation of power to an administrative body, but without any standard of guidance whatsoever fixed for that administrative body, by the legislature. The State Aviation act thereupon violates the fundamental constitutional concept referred to above.

While the court will indulge every reasonable intendment in favor of the constitutionality of an act of the legislature, it is without authority to declare valid a legislative provision which so clearly violates the constitutional mandate as does the State Aviation act. Of course, the severability provision of the act in section 14 may limit the effect of its above invalidity.

Counsel will submit an order accordingly.