## ROSENHAN v. UNITED STATES.
No. 2514.

Circuit Court of Appeals, Tenth Circuit.

Nov. 16, 1942.

Zar E. Hayes, of Salt Lake City, Utah (Grover A. Giles and Calvin L. Rampton, both of Salt Lake City, Utah, on the brief), for appellant.

John S. Boyden, of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant appeals from a judgment of the District Court of Utah assessing civil penalties, imposed by Section 901 of the Civil Aeronautics Act of 1938 (52 Stat. 977, 49 U.S.C.A. §§ 401 et seq., 621) for violations of Section 610(a) (1) of the Act, 49 U.S.C.A. § 560.[1]

The United States, through its attorney for the District of Utah, by civil complaint, containing four causes of action, charged that the appellant, on four separate dates, operated a civil aircraft in air commerce, as defined by Section 1(3) of the Act, 49 U.S.C.A. § 401(3),[2] within a designated civil airway, as defined by Section 1(16) of the Act, 49 U.S.C.A. § 401 (16),[3] without having currently in effect a certificate of airworthiness as required by Section 610(a) (1).

The appellant answered, admitting the designation and establishment of the airway, under the Civil Aeronautics Act, across the state of Utah, as an integral

---

[1] "(a) It shall be unlawful—

"(1) For any person to operate in air commerce any civil aircraft for which there is not currently in effect an airworthiness certificate, or in violation of the terms of any such certificate;
* * * *".

[2] " 'Air commerce' means interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or *any operation or navigation of aircraft within the limits of any civil airway* or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce."

[3] " 'Civil airway' means a path through the navigable air space of the United States, identified by an area on the surface of the earth, designated or approved by the Administrator of Civil Aeronautics as suitable for interstate, overseas, or foreign air commerce."

part of interstate and foreign air commerce. He further admitted that on the dates specified he operated a civil aircraft in the designated airway without having currently in effect an airworthiness certificate for the said aircraft from the Federal authority, as authorized by Section 603(c) of the Act, 49 U.S.C.A. § 553(c),[4] but alleged that there was currently in effect, on the specified dates, an airworthiness certificate on the said aircraft issued by the Utah State Aeronautics Commission, and that his operations of the aircraft, although within the federally designated airway, were wholly within the state of Utah; were not a part of interstate or foreign air commerce, and did not remotely affect interstate commerce. He alleged that since his operations were wholly intrastate, and did not remotely affect interstate air commerce, the asserted control over the admitted operations was not within the interstate commerce powers of the Congress, and constituted attempted exercise of a power reserved to the sovereign states under the 10th Amendment to the Constitution.

The court sustained the United States' motion for judgment on the pleadings and the judgment of the court is based upon the issues as cast by the pleadings, of which the appellant complains, contending the motion admitted the truth of his allegations that on the dates mentioned there was currently in effect a certificate of airworthiness issued by the Utah State Aeronautics Commission which met the requirements of the Federal Act, and further admitted the truth of his affirmative defense to the effect that insofar as the Act had application to his intrastate operations it is unconstitutional. The motion for judgment on the pleadings admits all facts well pleaded, but it does not admit conclusions of law. The Government therefore admits the issuance of a certificate of airworthiness on the aircraft by the Utah State Aeronautics Commission, but it does not admit the legal conclusion that such a certificate met the requirements of the Civil Aeronautics Act, supra, requiring a certificate of airworthiness. Neither does the motion admit the affirmative defense of the asserted unconstitutionality of the Act as applied to the admitted intrastate operations.

We think the pleadings as thus cast present clearly and concisely the bare legal question whether the Congress may in the exercise of its commerce powers, by its definition of interstate air commerce, include within its scope "any operation or navigation of aircraft within the limits of any civil airway", and thereby forbid the intrastate operation of a civil aircraft within a federally designated airway, unless there is currently in effect an airworthiness certificate issued by the duly constituted federal authority, and whether the state certificate of airworthiness meets the requirements of the Federal Act. No further facts are essential to a decision on this question, and the court correctly based its decision on the facts admitted by the pleadings.

The Civil Aeronautics Act, supra, was enacted as advanced legislation in recognition of rapidly growing air commerce and was comprehensively designed to promote civil aeronautics, and to that end develop and secure maximum aeronautical safety. Its broad purposes are manifest by the text of the Act. See Section 2 of the Act. The Act created a civil aeronautics authority to be composed of expert personnel, with powers to effectuate the full purposes of the Act. To that end the authority was empowered to designate and establish civil airways, to regulate other airways established with its approval, and to install or supervise the installation of equipment purposed to attain the maximum safety. It authorized the authority not only to establish and to regulate airways, but to regulate and prescribe the mechanical standards for aircraft to be flown within the designated airways. The Act, also, provided for the registration of all aircraft wherever and however used, and provided that no person should operate an aircraft as an airman without a certificate of authority, or that no person should operate any civil aircraft without having currently in effect an airworthiness certificate, or in violation of the terms of such certificate. It provided, further, that any regis-

[4] "The registered owner of any aircraft may file with the Administrator of Civil Aeronautics an application for an airworthiness certificate for such aircraft. If the Administrator of Civil Aeronautics finds that the aircraft conforms to the type certificate therefor, and, after inspection, that the aircraft is in condition for safe operation, it shall issue an airworthiness certificate. * * * "

tered owner of any aircraft could apply for a certificate of airworthiness, as required by the Act, and for the issuance of the certificate after inspection and determination of airworthiness, and made unlawful noncompliance with requirements of the Act. The Act does not textually recognize a state certificate of airworthiness as a compliance with its requirements, and we cannot presume a congressional intent to do so.

Congressional regulation of interstate air commerce in the interest of safety and efficiency is new and modern, but the law applicable thereto is of another generation. To sustain the broad and plenary power of the Congress to regulate interstate air commerce in the interest of safety and efficiency, we need but recur to the prophetic pronouncement of the Supreme Court of the United States, long before the skies were considered aeronautical highways, when it said: "Constitutional provisions do not change, but their operation extends to new matters, as the modes of business and the habits of life of the people vary with each succeeding generation. The law of the common carrier is the same to-day as when transportation on land was by coach and wagon, and on water by canal boat and sailing vessel; yet in its actual operation it touches and regulates transportation by modes then unknown,—the railroad train and the steamship. Just so is it with the grant to the national government of power over interstate commerce. The constitution has not changed. The power is the same. But it operates to-day upon modes of interstate commerce unknown to the fathers, and it will operate with equal force upon any new modes of such commerce which the future may develop." In re Debs, Petitioner, 158 U.S. 564, 595, 15 S.Ct. 900, 909, 39 L.Ed. 1092.

■ It cannot be doubted that if the Federal Act is devoted to the promotion of safety and efficiency in interstate commerce, whether it be the stagecoach, sailboat, steamship, railroad train, motor truck, or airplane, if the Act bears some reasonable and rational relationship to the subject over which it has assumed to act, the power is supreme and may not be denied, although it may include within its scope activities which are intrastate in character. "It is no objection to such an exertion of this power that the dangers intended to be avoided arise, in whole or in part, out of matters connected with intrastate commerce." Southern R. Co. v. United States, 222 U.S. 20, 27, 32 S.Ct. 2, 4, 56 L.Ed. 72. See, also, Texas & P. R. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, and Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432.

■■ The appellant contends that on a trial of the case he could have shown that the flight of his aircraft in the designated civil airway did not in any way endanger or interfere with safety in interstate commerce. We may concede that he could have shown that at the time the aircraft in question was in flight through, or upon, the designated airway no other aircraft was within dangerous range, but he cannot avoid the incidence of the Act by showing that these particular flights did not actually endanger interstate commerce. Congress has not seen fit to limit the question of safety in these circumstances to a manifestation of actual danger, rather it has sought to eliminate all potential elements of danger. The declaration that no aircraft shall operate in a designated civil airway, without having currently in effect an airworthiness certificate, evinces congressional judgment that such an operation is detrimental to the safety of those engaged in interstate commerce, or those who make use of its facilities. We cannot say that this exerted regulation does not have any reasonable relationship to the promotion of safety in air commerce, or that it does not rest upon any rational basis, when considered in the light of the broad legislative purpose. We conclude that such statutory precautions do not transcend the powers granted to the Congress over interstate commerce, or unduly encroach upon the powers reserved to the sovereign states.

The judgment is affirmed.