ROBERT DAVID WARD *v.* STATE OF MARYLAND

[No. 87, September Term, 1976.]

*Decided June 24, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Malcolm W. Houston* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. SMITH and ELDRIDGE, JJ., concur in part and dissent in part and ELDRIDGE, J., filed an opinion concurring in part and dissenting in part in which SMITH, J., joins at page 500 *infra.*

For over a quarter of a century it has been a crime under the laws of Maryland "to operate an aircraft in the air, or on the ground or water, while under the influence of intoxicating liquor, narcotics, or other habit-forming drug, or, . . . in a careless or reckless manner so as to endanger the life or property of another." Acts 1949, ch. 422, § 29; Acts 1974, ch. 363, § 2; Maryland Code (1951) and (1957) Art. 1A, § 29; Maryland Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Art. 1A, § 10-1002.[1] *See* Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 38, § 1. The statute has never been before the appellate courts of this State. Robert David Ward presents it to us in this appeal. In challenging the judgment entered against him upon being found guilty of operating an aircraft in a reckless manner,[2] he does not

[1]. Acts 1974, ch. 363 repealed former article 1A, "Aeronautics", and enacted present article 1A, "Aviation," to take effect 1 July 1974. The identical language of former § 29 appears in the present § 10-1002.

[2]. As initially executed, the Statement of Charges under which Ward was prosecuted by Maryland, in addition to the charge that he operated an aircraft "in a reckless and unsafe manner," alleged that he operated an aircraft "while under the influence of intoxicating liquor." For reasons not disclosed in the record before us, the charging document was amended by deleting the latter charge.

dispute the accuracy of the facts and circumstances resulting in his arrest and prosecution by the State. Nor does he present any question as to the sufficiency of the evidence to prove beyond a reasonable doubt the corpus delicti of the offense and his criminal agency. And he offers no claim that the penalties imposed were in any way at variance with the sanctions authorized. The issue he raises is that Maryland was precluded from prosecuting him because the statute proscribing the conduct was preempted by federal law. He, therefore, claims error in the denial by the trial court of his motion to dismiss the charges.

The issue for decision is narrow in lineation but sweeping in implication. The great majority of the states have enacted legislation similar to the Maryland statute, some in identical language, making it a crime to operate an aircraft so as to endanger the person or property of another.[3] If Ward's view

---

3. Most of the state statutes speak in terms of operating an aircraft recklessly or while under the influence of intoxicating liquor or habit-forming drugs. *See,* for example:

Alabama — Ala. Code tit. 4, § 20 (30) 5 (1958);
Alaska — Alas. Stat. § 02.30.030 (1962);
Arizona — Ariz. Rev. Stat. § 28-1744 (1976);
Arkansas — Ark. Stat. Ann. § 74-109 (1957);
California — Cal. Pub. Utilities Code § 21407 (West 1965);
Connecticut — Conn. Genl. Stat. § 15-72 (1977);
Delaware — Del. Code Ann. tit. 2, § 304 (1974);
Florida — Fla. Stat. Ann. § 860.13 (1) (b) (1976);
Georgia — Ga. Code Ann. § 11-101 (1973);
Hawaii — Hawaii Rev. Stat. § 263-11 (1968);
Idaho — Idaho Code § 21-112 (1947);
Indiana — Ind. Stat. Ann. § 8-21-4-8 [14-109] (Burns 1973);
Iowa — Iowa Code Ann. § 328.41 (Supp. 1976);
Maine — Me. Rev. Stat. Ann. tit. 6 § 202 (9) (1964);
Michigan — Mich. Comp. Laws Ann. § 259.180 (1967);
Minnesota — Minn. Stat. Ann. § 360.075 (1966);
Mississippi — Miss. Code § 61-11-1 (1972);
Missouri — Mo. Rev. Stat. § 305.030 (1969);
Montana — Mont. Rev. Code § 1-603 (1968);
Nevada — Nev. Rev. Stat. § 493.130 (1973);
New York — N.Y. Genl. Bus. Law § 245 (L.C.P. Cum. Supp. 1976);
North Carolina — N.C. Genl. Stat. § 63-18 (1975 Repl. Vol.);
Ohio — Ohio Rev. Code § 4561.15 (Anderson 1967);
Oregon — Ore. Rev. Stat. § 493.160 (1973);
South Carolina — S.C. Code, ch. 1, § 2-10 (1962);
South Dakota — S.D. Comp. Laws Ann. § 50-13-16 (1967);
Tennessee — Tenn. Code Ann. § 42-113 (1964 Repl. Vol.);
Virginia — Va. Code § 5.1-13 (1973 Repl. Vol.);
Wisconsin — Wisc. Stat. Ann. § 114.09 (1974).

There are other state statutes which speak only in terms of operating an

that the state statutes are preempted prevails there could be no criminal prosecution, under existing laws, by any state, or, as we shall see, by the federal government, for operating an aircraft in a careless or reckless manner or while under the influence of intoxicating liquor, narcotics, or other habit-forming drug, no matter how flagrant the conduct proscribed and regardless of the seriousness of the danger to life and property occasioned by that conduct. We have not been referred to a decision of another jurisdiction, state or federal, which addresses the matter of preemption of a statute prohibiting such operation of an aircraft. There being no decision precisely on point to bind or persuade us, we shall follow the path laid out by the decisions of the Supreme Court of the United States concerning the doctrine of preemption to determine whether the Maryland statute is enforceable.

I

To put the issue for decision in perspective we recount what Ward did and what happened as a result.[4] Ward was the holder of a valid student aircraft pilot license and medical certificate issued by the Federal Aviation Administration (FAA), pursuant to the applicable Federal Aviation Regulations (FAR). On the late afternoon of 18 May 1975 he made an instructional flight from Hyde's Airfield in Clinton, Prince George's County, Maryland. Thereafter, he and his instructor pilot enjoyed a quiet dinner complete with pre- and postprandial liquid refreshment in an amount sufficient, when Ward was examined some hours

---

aircraft while under the influence of intoxicating liquor or habit-forming drugs. *See,* for example:

Illinois — Ill. Ann. Stat., ch. 15 ½,
    § 22.43d (Smith-Hurd., Cum. Supp. 1977);
Massachusetts — Mass. Ann. Laws, ch. 90, § 44 (1975);
New Jersey — N. J. Stat. Ann. § 6:1-18 (1973);
Pennsylvania — Pa. Stat. Ann. tit. 2, § 1475 (a) (Purdon 1963);
Texas — Tex. Rev. Civ. Stat., art. 46-f-3 (1977);
Wyoming — Wyo. Stat. § 10-13 (1959).

4. At the trial in the circuit court the case was submitted on "stipulation of facts." That stipulation is not in the record before us, but the facts are presented to us on an agreed statement pursuant to Maryland Rule 828g.

later, to show a blood alcohol level of 0.17 percent.[5] Later that evening, after a visit with Ward's parents, Ward and his instructor returned to the airport. Ward slept in his car for some hours. On awakening in the early morning he decided to practice some "touch and gos" — taking off and landing without leaving the airport pattern. Inadvertently entering clouds, he climbed above the cloud layer and circled what he assumed to be the Chesapeake Bay area, until breaks were visible in the overcast. It was about 6:00 A.M. when he descended through a hole in the clouds. He established that his position was over Greenbelt, Maryland, and in an apparent burst of euphoria he "buzzed" nearby apartments. His activities were observed by a Maryland State Police officer in a helicopter who followed the plane back to the airport. Ward was arrested upon landing.

Ward was tried in the District Court of Maryland in Prince George's County on a charge of operating an aircraft in a reckless manner, convicted, and appealed from the judgment entered to the Circuit Court for Prince George's County. Tried *de novo* by the judge in the circuit court, he was again found guilty. He was fined $500 and costs and sentenced to imprisonment for a term of 90 days. The prison sentence was suspended "upon special condition that he not operate an aircraft within the State for a period of one year from September 17, 1975." [6] Upon Ward's petition we issued a writ of certiorari to review the judgment of the Circuit Court for Prince George's County.

In a civil proceeding, the Federal Aviation Administration determined that Ward had violated seven Federal Aviation Regulations in his operation of the aircraft on 19 May 1975,

5. By way of comparison, a prosecution for a violation of the Maryland Vehicle Laws with respect to driving a vehicle, 0.17 percent by weight of alcohol in the blood of a person is in excess of the percent giving rise to *prima facie* evidence of intoxication. Maryland Code (1974, 1975 Cum. Supp.) Courts and Judicial Proceedings Article § 10-307 (e).

6. The same fine and term of imprisonment had been imposed by the District Court. That court also suspended the execution of the prison sentence, but spelled out that Ward was placed on unsupervised probation for two years upon the condition that he "not fly an aircraft in State of Md. within one year."

including FAR 91.9, prohibiting the careless or reckless operation of an aircraft so as to endanger the life or property of another. It ordered that his airman certificate be revoked. Subsequently, however, "after a thorough investigation of Mr. Ward, his instructor, his level of aeronautical knowledge and the flight leading to his prosecution, FAA granted permission to reissue his license six (6) months after surrender to it."

## II

The opinion of the Court in *Knapp v. Schweitzer*, 357 U. S. 371, 78 S. Ct. 1302 (1958) (Frankfurter, J.), reminded, at 375, that the Constitution of the United States "is one of particular powers given to the National Government with the powers not so delegated reserved to the States or, in the case of limitations upon both governments, to the people. Except insofar as penal remedies may be provided by Congress under the explicit authority to 'make all Laws which shall be necessary and proper for carrying into Execution' the other powers granted by Art. I, § 8, the bulk of authority to legislate on what may be compendiously described as criminal justice, which in other nations belongs to the cental government, is under our system the responsibility of the individual States." [7] It is apparent that the Constitution alone does not deny Maryland the power to enact the challenged statute. "While federal pre-emption of state statutes is, of course, ultimately a question under the Supremacy Clause, U. S. Const., Art. VI, cl. 2, [8]

---

7. The Court observed that the adoption of the Fourteenth Amendment did not change the distribution of powers between the States and the Federal Government so as to withdraw the basic interests of criminal justice from the exclusive control of the States, but it did impose restrictions upon the States in the making and in the enforcement of the criminal laws. "It did this insofar as the 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions' . . . are implied in the comprehensive concept of due process of law. But this concept does not blur the great division of power between the Federal Government and the individual States in the enforcement of the criminal law." Knapp v. Schweitzer, 357 U. S. 371, 378, 78 S. Ct. 1302 (1958).

8. The second clause of Art. VI of the Constitution of the United States reads:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be

analysis of pre-emption issues depends primarily on statutory and not constitutional interpretation." *City of Philadelphia v. New Jersey*, 430 U. S. 141, 142, 97 S. Ct. 987, 988 (1977). Thus, we are required to decide only whether federal laws in the field of aviation preclude Maryland from enforcing its statute.

The Supreme Court of the United States traced the path, "clearly laid out" by its prior decisions, which must be followed to answer this question. *Jones v. Rath Packing Co.*, 430 U. S. 519, 525, 97 S. Ct. 1305, 1309 (1977). We summarize what was said. The first inquiry is whether Congress, pursuant to its power to regulate commerce, has prohibited state regulation in the area. That is, has Congress occupied the field to the exclusion of state action. "Where, as here, the field which Congress is said to have preempted has been traditionally occupied by the States, . . . '[w]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'." *Id*. It is when Congress has "unmistakably . . . ordained," either explicitly by command in the statute's language, or implicitly by the statute's structure and purpose, that its enactments alone are to regulate a part of commerce, that state laws regulating that aspect of commerce must fall.

If Congress has not so occupied the field as to exclude all state action, inquiry turns to whether the federal and state laws conflict. "Congressional enactments that do not exclude all state legislation in the same field nevertheless overrule state laws with which they conflict." *Id*. State and federal laws are so inconsistent that state law must give way when, under the circumstances of the particular case, the state's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." In this determination, there is considered "the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Id*.

---

the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

It seems, in the final analysis, that a federal statute preempts a state statute when such was the Congressional intent. Even when Congress exercises its paramount authority it may determine how far its regulation shall go. "There is no constitutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does, state regulation outside that limited field and otherwise admissible is not forbidden or displaced." *Kelly v. State of Washington*, 302 U. S. 1, 10, 58 S. Ct. 87 (1937). The Court said in *De Canas v. Bica*, 424 U. S. 351, 360, n. 8, 96 S. Ct. 933 (1976), quoting *Hines v. Davidowitz*, 312 U. S. 52, 78-79, 61 S. Ct. 399 (1941) (Stone, J. dissenting):

> Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution. To discover the boundaries we look to the federal statute itself, read in the light of its constitutional setting and its legislative history.

The intent to supersede the exercise by a state of its police power as to matters not covered by federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. Such intent is not to be implied unless the act of Congress is in actual conflict with the law of the state, and, as the Supreme Court has said, *Jones v. Rath Packing Co., supra,* 97 S. Ct. at 1309, an "actual conflict" occurs only when the state's law " 'stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress'." *See Governor of Maryland v. Exxon Corp.,* 279 Md. 410, 370 A. 2d 1102, 1125. Furthermore, " [t]he application of the principle is strongly fortified where the state exercises its power to protect the lives and health of its people." *Kelly v. State of Washington, supra,* 302 U. S. at 13.

### III

The federal law which Ward urges preempts the Maryland statute is the Federal Aviation Act of 1958, 72 Stat. 749, 49

U.S.C.A. (1970) § 1301 *et seq.* which had its roots in the Air Commerce Act of 1926, 44 Stat. 568, and the Civil Aeronautics Act of 1938, 52 Stat. 973. It has been said that the main stimulus for the enactment of the 1958 Act was the undesirable state into which the quality of safety regulation of aeronautics had fallen. *See* 1958 U.S. Code Cong. & Adm. News 3741, 3742; *Comment*, 39 J. Air & Com. 521, 526-527 (1973). The 1958 Act created the Federal Aviation Program. 49 U.S.C.A. (1970) ch. 20. It is apparent that the Federal Aviation Program established a comprehensive scheme for the safe and efficient use of the nation's airspace. 1958 U.S. Code Cong. & Adm. News 3741. *See Arney v. United States*, 479 F. 2d 653, 658 (9th Cir. 1973); *United States v. Christensen*, 419 F. 2d 1401, 1404 (9th Cir. 1969); *Pike v. C.A.B.*, 303 F. 2d 353, 355 (8th Cir. 1962); *Air Line Pilots Association, International v. Quesada*, 276 F. 2d 892, 894 (2nd Cir. 1960); *Southeastern Aviation, Inc. v. Hurd*, 355 S.W.2d 436, 439 (Tenn. 1962). That scheme, however, did not include the criminal prosecution of a person who operated an aircraft in a careless or reckless manner so as to endanger the life or property of another.

Subchapter III of the Federal Aviation Program sets out the organization of the Federal Aviation Administration and the powers and duties of its Administrator. Section 1348 (a) of subchapter III authorizes and directs the Administrator to develop plans for and formulate policy with respect to the use of navigable airspace and assign by rule, regulation or order the use of navigable airspace under such terms, conditions, and limitations as he may deem necessary in order to insure the safety of aircraft and the efficient utilization of such airspace. Section 1348 (c) authorizes and directs him to prescribe air traffic rules and regulations governing the flight of aircraft, for the navigation, protection and identification of aircraft, for the protection of persons and property on the ground, and for the efficient utilization of the navigable airspace, including rules as to safe altitudes of flight and rules for the prevention of collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects. Section

494

1354 (a) of subchapter III empowers the Administrator to make rules and regulations as he deems necessary to carry out the program and to perform his powers and duties.

Subchapter VI of the Federal Aviation Program deals with safety regulation of civil aeronautics. Section 1421 of subchapter VI empowers the Administrator, and makes it his duty, to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time, among other things, such reasonable rules and regulations as he finds necessary to provide adequately for safety in air commerce.

A Federal Aviation Regulation, 14 Code of Federal Regulations (1976) § 91.9, prohibits the reckless operation of 'an aircraft:

> No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.[9]

It is clear that FAR 91.9 was made under the authority of subchapter III and subchapter VI. *See* 14 CFR at page 105.

Violation of FAR 91.9 is not a crime; no criminal sanctions are authorized. Section 1472 (a) of 49 U.S.C.A. (1970), under the heading "Criminal Penalties," provides generally:

> Any person who knowingly and willfully violates any provision of this chapter (*except subchapters III*, V, *VI*, VII, and XII of this chapter), or any order, rule, or regulation issued by the Administrator or by the Board under any such provision or any term, condition, or limitation of any certificate or permit issued under subchapter IV of this chapter, for which no penalty is otherwise provided in this section or in section 1474 of this title, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject for the first offense to a fine of not more

---

**9.** There is also a Federal Aviation Regulation pertaining to alcoholic beverages and drugs and the operation of an aircraft. *See* 14 Code of Federal Regulations (1976) § 91.11.

than $500, and for any subsequent offense to a fine of not more than $2,000. If such violation is a continuing one, each day of such violation shall constitute a separate offense. (Emphasis added).

Subsections (b) through (p) provide penalties for specific acts, none of which includes careless or reckless operation of an aircraft. Subchapter IV and § 1474 of Title 49 do not concern FAR 91.9. *See* 14 CFR § 13.23. On the other hand, § 1471 of Title 49 specifically provides that any person who violates the provisions of subchapters III and VI, or any rule, regulation, or order issued thereunder, shall be subject to a *civil penalty* of not more than $1,000 for each violation. *See* 14 CFR § 13.15. Also, the Administrator may, from time to time, reexamine any airman, and if, as a result of any such reexamination or as a result of any other investigation made by him, he determines that safety in air commerce or air transportation and the public interest requires, he may issue an order suspending or revoking an airman certificate. 49 U.S.C.A. (1970) § 1429. *See* 14 CFR § 13.19.

As we have indicated, the conduct proscribed by FAR 91.9 is a crime under Maryland law. Penalties authorized by Maryland Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Art. 1A, § 10-1003 (a) are a fine of not more than $500 or imprisonment of not more than 90 days or both. Section 10-1003 (b) provides that "in addition to or in lieu of [those penalties] or as a condition to the suspension of a sentence which may be imposed ... the court in its discretion may prohibit the violator from operating an aircraft within the State for such period as it may determine but not to exceed one year." [10]

## IV

We have no difficulty whatever in deciding that Congress has not occupied the entire field of aeronautics by the

---

10. Maryland Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Art. 1A, § 10-1002 provides: "Penalties for the violation of this section shall be as prescribed by § 10-1003 (a) of this article." As we have indicated, § 10-1003 (a) authorizes a fine and imprisonment. Neither § 10-1002 nor § 10-1003 (a) refers to § 10-1003 (b) and its additional sanctions.

Federal Aviation Act of 1958. There is no such command explicitly stated in the language of the Act, and we do not find it implicitly contained in the statute's structure and purpose. Generally accepted, for example, is that in the economic area of aeronautics all state legislation is not excluded. *See Calkins, Federal-State Regulation of Aviation*, 50 Va. L. Rev. 1386, 1399-1402 (1964); *Comment*, 39 J. Air L. & Com. 521, 529-531 (1973); *Means & Chasnoff, State Regulation of Air Transportation: The Texas Aeronautics Commission*, 53 Tex. L. Rev. 653, 656-659 (1975). The Supreme Court has held that the Federal Aviation Administrator in conjunction with the Environmental Protection Agency "has full control over aircraft noise, preempting state and local control." *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U. S. 624, 633, 93 S. Ct. 1854 (1973). But that conclusion was not because Congress had "unmistakably ordained" that its enactments alone were to regulate air commerce in its entirety, but because the 1968 amendment (82 Stat. 395) and the 1972 amendment (The Noise Control Act, 86 Stat. 1234) to the 1958 Act established "the pervasive nature of the scheme of federal regulation of aircraft noise." We construe the holding as limited to that aspect of aeronautics. *Id.*, 411 U. S. at 633.

Maryland has expressly retained its police powers with respect to crimes related to aeronautics. It declared in its Aviation Act, § 3-307 that "[a]ll crimes . . . committed by or against an airman or passenger while in flight over this State shall be governed by the laws of this State . . . ." Congress has recognized the right of a state to do so. In 1961 the Federal Aviation Act of 1958 was amended by designating criminal penalties for specific crimes. 49 U.S.C.A. (1970) § 1472 (i) — (p). *See* 14 CFR § 13. 23. House Report 958 on the proposed legislation observed that "in the case of crimes committed in the airspace over States of the United States, most of the acts with which this legislation deals would be violations of the laws of one or more of such States." 1961 U.S. Code Cong. & Adm. News 2563. It declared: "The offenses punishable under this legislation would not replace any State jurisdiction but would, where

both Federal and State law provided for punishment for the same act, be in addition to the State criminal law." *Id.*, at 2564. In discussing the need for the legislation, the report stated, *id.*, at 2565:

> As is well known, the Federal Government does not provide a general criminal code for all crimes committed in the United States. That is the province of the various States. However, criminal codes of the States are at times supplemented by Federal Law in fields where the Federal Government has responsibilities.
>
> We wish to emphasize that it is not our intent to divest the States of any jurisdiction they now have. This legislation merely seeks to give the Federal Government concurrent jurisdiction with the States in certain areas where it is felt that concurrent jurisdiction will contribute to the administration of justice and protect air commerce.

The Report asserted:

> This, we want to make clear, does not preempt any State jurisdiction but would only supplement it. *Id.*, at 2565.

We reject Ward's suggestion that "the entire [Maryland Aviation] Act should be struck down."

Having determined that Congress has not excluded all state action in the field of aeronautics or even in the more limited field of air safety, we center on § 10-1002 of the Maryland Aviation Act to ascertain whether it conflicts with the federal law in the field. Although the Maryland statute and the federal regulation proscribe identical conduct with respect to the careless or reckless operation of an aircraft,[11] the two laws are not coterminous because

---

11. Section 10-1002, Art. 1A of the Maryland Act requires that "[i]n any proceeding charging careless or reckless operation of aircraft in violation of this section, the court determining whether the operation was careless or reckless shall consider the standards for safe operation of aircraft prescribed by federal statutes or regulations governing aeronautics."

of the sanctions prescribed. When the relationship between the Maryland and federal laws as they are written, as they are interpreted and as they are applied, is considered, it is manifest that the Maryland law does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, namely, "to provide for the regulation and promotion of civil aviation in such manner as to best foster its development and safety, and to provide for the safe and efficient use of the airspace by both civil and military aircraft." 1958 U.S. Code Cong. & Adm. News 3741. On the contrary, the Maryland law enhances the Congressional purposes and objectives by deterring through criminal sanctions the operation of an aircraft in such manner as to endanger the life and property of others. It would be incongruous indeed, in light of the federal purposes and objectives, if Maryland were to be constitutionally precluded from the criminal prosecution of a person for such conduct because a federal regulation authorized civil penalties.

We are not persuaded that there is a conflict of constitutional dimension simply because the State court may prohibit a violator of its statute from operating an aircraft within Maryland for up to one year even though the violator holds a federal airman certificate which would permit him to operate an aircraft. Section 10-1003 of the State Statute expressly provides:

> In no event shall this subsection be construed as warrant for the court or any other agency or person to take away, impound, hold or mark any federal airman or aircraft certificate, permit, rating or license . . . .

In any event, we do not see how prohibiting, for a limited time, the operation of an aircraft within Maryland by a person who has been found guilty in a court of law of operating an aircraft in a careless or reckless manner so as to endanger the life or property of another could be said to stand as an obstacle to the Congressional purposes and objectives.

In short, it was the clear intent of Congress that criminal prosecution of the proscribed conduct be left with the states, and there is no conflict within the contemplation of the doctrine of preemption between the State and federal laws.

Ward suggests that the declaration in § 10-1002 of the Maryland Aviation Act that the court in determining whether the operation of an aircraft was careless or reckless, shall consider the standards for safe operation of an aircraft prescribed by federal statutes or regulations governing aeronautics (see footnote 11 *supra*) "would seem to be an unconstitutional delegation of power" if t! e federal statutes and regulations must be followed. He refers only to a decision of the Court of Oyer and Terminer of New Jersey, *State v. Larson*, 10 N.J. Misc. 384, 160 A. 556 (1932), which invalidated a New Jersey statute. *Larson* is inapposite. There the question was whether the New Jersey Legislature was constitutionally permitted to authorize the conviction of a crime "when it has fixed no standard of conduct to be conformed to by the citizen but has left that standard to be fixed by the regulations of the subordinate administrative authority, either in its untrammeled discretion, or to conform substantially to the legislation of another sovereignty, such legislation being referred to in the act, but not incorporated therein." *Id.*, 160 A. at 557. Furthermore, there was a provision of the New Jersey Constitution, Art. 4, § 7, par. 4, expressly forbidding the latter. Here the standard of conduct was fixed by the statute — an aircraft shall not be operated carelessly or recklessly so as to endanger the life or property of another — and the trial court was merely directed to look for guidance to federal standards with regard to such operation, ostensibly to promote uniformity. *Larson* observed, 160 A. at 558: "It may well be a sound exercise of legislative discretion to have the regulations for the conduct of a matter, so oblivious of artificial land boundaries as aviation, substantially identical for both intrastate and interstate commerce. Nor is there anything unconstitutional in the state's adopting as its own the federal policy." Ward does not claim, and it is clear, that the "careless or reckless" standard is not so vague and

indefinite as to offend due process of law. *See Lashley v. State,* 10 Md. App. 136, 142, 268 A. 2d 502, *cert. denied,* 259 Md. 733, *appeal dismissed, cert. denied,* 402 U. S. 991, 91 S. Ct. 2169 (1970). And *see Samson v. State,* 27 Md. App. 326, 335, 341 A. 2d 817 (1975) giving at least tacit approval to a legislative provision regarding control of dangerous substances, Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 278 (c), that any new substance which is designated as controlled under federal law shall be similarly controlled under Maryland law absent objection by the Department of Health and Mental Hygiene.

We find that Maryland Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Art. 1A, §§ 10-1002 and 10-1003 are not preempted by federal law. We hold, therefore, that the Circuit Court for Prince George's County did not err in denying the motion to dismiss the charges.

> *Judgment affirmed; costs to be*
> *paid by appellant.*

*Eldridge, J., concurring in part and dissenting in part*:

Section 10-1002 of Maryland Code (1957, 1976 Repl. Vol.), Art. 1A, makes it unlawful "for any person to operate an aircraft . . . while under the influence of intoxicating liquor . . . or to operate an aircraft . . . in a careless or reckless manner . . . ." A violation of this section is generally punishable by fine or imprisonment under subsection (a) of § 10-1003. However, subsection (b) of § 10-1003 also provides for special sanctions for reckless operation of aircraft in addition to those provided for in subsection (a). It states, in part:

> "(b) *Special.* — For any violation of § 10-1002 of this article, in addition to, or in lieu of, the penalties provided by subsection (a) of this section, or as a condition to the suspension of a sentence which may be imposed pursuant thereto, the court in its discretion may prohibit the violator from operating an aircraft within the State for such

period as it may determine but not to exceed one year. Violation of the duly imposed prohibition of the court may be treated as a separate offense under this section or as a contempt of court. . . ."

I agree with the majority that, in light of the absence of federal criminal penalties for reckless operation of aircraft, the sanctions of fine and imprisonment provided in subsection (a) would not appear to be preempted by the Federal Aviation Act of 1958, 49 U.S.C. 1301 *et seq.* However, I cannot agree with the majority that there is no "conflict of constitutional dimension" between the federal act and subsection (b) of the State law which authorizes the court to prohibit an individual from operating an aircraft within the state even though that person may hold a valid federal airman's certificate entitling him to operate an aircraft. This prohibition, which apparently would extend to both interstate as well as intrastate operations, is, in effect, a suspension of a federally issued airman's certificate. As the issuance and suspension and revocation of a pilot's license is a matter subject solely to federal regulation, I believe that § 10-1003 (b) is invalid by virtue of the Supremacy Clause, United States Constitution Art. VI, Cl. 2. *See Rice v. Santa Fe Elevator Corporation*, 331 U. S. 218, 236, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947).

The Administrator of the Federal Aviation Administration (F.A.A.) is authorized to "issue airman certificates specifying the capacity in which the holders thereof are authorized to serve as airmen in connection with aircraft." 49 U.S.C. 1422. An airman's certificate is required for operation of a civil aircraft in air commerce. 49 U.S.C. 1430 (a) (2). Air commerce is broadly defined as "interstate . . . air commerce . . . or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce." 49 U.S.C. 1301(4). The F.A.A. is empowered to reexamine any civil airman and, " [i]f, as a result of any such . . . reexamination, or if, as a result of any other investigation

made by the Administrator, he determines that safety in air commerce ... and the public interest requires, the Administrator may issue an order ... suspending, or revoking ... any ... airman certificate ...." 49 U.S.C. 1429 (a).

It has been held that Congress has sought to insure the safety of civil aviation by extending federal safety regulations to virtually all civil aviation, including wholly intrastate flights. *See Rosenhan v. United States*, 131 F. 2d 932 (10th Cir. 1942), *cert. denied*, 318 U. S. 790, 63 S. Ct. 993, 87 L. Ed. 1156 (1943); *United States v. Drumm*, 55 F. Supp. 151 (D. Nev. 1944); *see also* Calkins, *Federal-State Regulation of Aviation*, 50 Va. L. Rev. 1386, 1395-1398 (1964). And in order to insure safety in civil aviation, Congress has delegated to the F.A.A. the responsibility of certifying pilots as competent to operate aircraft and has provided that the Administrator should revoke or suspend such certification when necessary in the interest of safety in air commerce.

Despite the fact that the F.A.A. has been delegated the authority by Congress to issue airman's certificates necessary to operate aircraft in civil aviation, the majority holds that a state may prohibit a holder of such a license to operate an aircraft. In my view, the conclusion is inescapable that a state statute which would prohibit that which is expressly permitted by a federal license, issued pursuant to federal law without qualification, is in direct and irreconcilable conflict with the federal law and therefore invalid under the supremacy clause. This was the conclusion reached by the Supreme Court in *Sperry v. State of Florida*, 373 U. S. 379, 83 S. Ct. 1322, 10 L.Ed.2d 428 (1963). There, the state of Florida sought to enjoin a nonlawyer, registered to practice before the United States Patent Office by the Commissioner of Patents, from counseling clients and preparing patent applications in Florida on the ground that such activities constituted the unauthorized practice of law in violation of state law. The Supreme Court noted that the states have "a substantial interest in regulating the practice of law within the State" and could, in the absence of federal legislation, prohibit

nonlawyers from engaging in the type of activities necessary for the preparation of patent applications. *Id.* at 383. However, Congress had by statute specifically authorized the Commissioner of Patents to prescribe regulations governing the representation of applicants before the Patent Office by " *'agents,* attorneys, *or other persons,'* " *id.* at 384. Pursuant to regulations promulgated by the Commissioner, the petitioner was duly registered to represent applicants before the Patent Office. In holding that the state could not enjoin the petitioner from engaging in activities expressly authorized by federal law, the Supreme Court stated (373 U. S. at 385):

> "The statute thus expressly permits the Commissioner to authorize practice before the Patent Office by non-lawyers, and the Commissioner has explicitly granted such authority. If the authorization is unqualified, then, by virtue of the Supremacy Clause, Florida may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority. . . . 'No State law can hinder or obstruct the free use of a license granted under an act of Congress.' Pennsylvania v. Wheeling & Belmont Bridge Co., 13 How. 518, 566, 14 L. Ed. 249."

*Cf. Huron Cement Co. v. Detroit,* 362 U. S. 440, 447, 80 S. Ct. 813, 4 L.Ed.2d 852 (1960).

The fact that a state limitation on the exercise of the federally granted right is imposed only as a sanction incident to a conviction under an otherwise valid criminal statute does not alter this result under the Supremacy Clause. In *Castle v. Hayes Freight Lines,* 348 U. S. 61, 75 S. Ct. 191, 99 L. Ed. 68 (1954), an interstate motor carrier doing business under a certificate of convenience and necessity issued by the Interstate Commerce Commission pursuant to the Federal Motor Carrier Act, 49 U.S.C. 301 *et seq.,* instituted an action to restrain Illinois officials from enforcing a statute providing for the suspension of the

carrier's right to use state highways for a period of one year for repeated violations of state imposed weight limitations. The Illinois Supreme Court had held that the statute was invalid insofar as it applied to the carrier's interstate operations, conducted pursuant to its federal certificate, on the ground that it conflicted with the Federal Motor Carrier Act. The Supreme Court affirmed this decision.

The Supreme Court in *Castle,* in an opinion by Mr. Justice Black, reasoned that the Federal Motor Carrier Act was a "comprehensive plan for regulating the carriage of goods by motor truck in interstate commerce" greatly reducing the power of the states to regulate interstate carriers. 348 U. S. at 63. The Court pointed out that, although the states were free under the federal act to regulate the weight and distribution of loads carried in interstate trucks, nevertheless the federal government had the exclusive power to determine which carriers could operate in interstate commerce. Evidence of this exclusive power was found in the extensive conditions set forth in the act governing the issuance and revocation or suspension of certificates of necessity and convenience by the Interstate Commerce Commission. Noting that the suspension of a carrier's right to use state highways "is the equivalent of a partial suspension of its federally granted certificate," and given the comprehensive federal procedures governing the issuance of certificates of convenience and necessity, the Supreme Court said that "it would be odd if a state could take action amounting to a suspension or revocation of an interstate carrier's commission-granted right to operate." *Id.* at 64. In response to the contention that without the power to suspend a carrier's right to use state highways, the state could not effectively enforce otherwise valid regulatory statutes, the Supreme Court stated (*id.* at 64-65):

> "It is urged that without power to impose punishment by suspension states will be without appropriate remedies to enforce their laws against recalcitrant motor carriers. We are not persuaded, however, that the conventional forms of punishment are inadequate to protect states from

overweighted or improperly loaded motor trucks. Moreover, a Commission regulation requires motor carriers to abide by valid state highway regulations. And as previously pointed out, the Commission can revoke in whole or in part certificates of motor carriers which willfully refuse to comply with any lawful regulation of the Commission. If, therefore, motor carriers persistently and repeatedly violate the laws of a state, we know of no reason why the Commission may not protect the state's interest, either on the Commission's own initiative or on complaint of the state."

I believe that *Castle v. Hayes Freight Lines, supra,* is controlling. The regulation of safety along highways has traditionally been viewed as an area of local concern, with the states being permitted great latitude in the absence of federal regulations. *See South Carolina State Highway Dept. v. Barnwell Bros.,* 303 U. S. 177, 58 S. Ct. 510, 82 L. Ed. 734 (1938). However, even in this area, the state cannot interfere with the exercise of a federal right. Aviation safety, on the other hand, is an area which, because of its nature, can only be adequately regulated through national control. As Mr. Justice Jackson said in *Northwest Airlines v. State of Minnesota,* 322 U. S. 292, 303, 64 S. Ct. 950, 88 L. Ed. 1283 (1944) (concurring opinion):

"Air as an element in which to navigate is even more inevitably federalized by the commerce clause than is navigable water. Local exactions and barriers to free transit in the air would neutralize its indifference to space and its conquest of time.

"Congress has recognized the national responsibility for regulating air commerce. Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal

commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and orders. Its privileges, rights, and protection, so far as transit is concerned, it owes to the Federal Government alone and not to any state government."

If the states are precluded from effectively revoking or suspending a federal license through enforcement of criminal statutes in an area such as highway safety, where extensive state regulation has historically been permitted, then surely they may not do so in an area requiring almost exclusive federal control.

The Federal Aviation Act, like the statutory scheme considered in *Castle v. Hayes Freight Lines, supra,* provides for a comprehensive federal licensing procedure governing the issuance and the revocation or suspension of the federal license. As there, because of its comprehensive nature, this regulation is exclusive. And as discussed above, this regulation extends to intrastate as well as interstate activities, unlike the regulatory scheme involved in *Castle v. Hayes Freight Lines, supra.* Given this exclusive and even more comprehensive federal regulation, I do not believe that the state, either directly or indirectly, as an incident to enforcement of valid regulatory statutes as in *Castle v. Hayes Freight Lines, supra,* may hinder the exercise of a right granted pursuant to a federal statute. Although the state does have an interest in protecting its citizens from the reckless operation of aircraft, this interest can be protected through the more traditional sanctions of fines and imprisonment as provided for in § 10-1003 (a). Moreover, as the record in this case demonstrates, the Federal Aviation Administration can revoke or suspend an airman's certificate if necessary to protect the public. The conduct prohibited by § 10-1002 is the same as that prohibited by the Federal Aviation Regulations. I cannot see why this is

not sufficient to protect the state's interest without interference in the comprehensive and otherwise uniform federal regulatory scheme.

For these reasons, I would hold that subsection (b) of § 10-1003 of the Maryland act is invalid under the Supremacy Clause and that, therefore, the circuit court had no authority to prohibit the defendant from operating an aircraft in this state for one year.[1]

Judge Smith has authorized me to state that he joins in the views expressed herein.

---

1. An additional question would be presented in this case if we were reviewing the sentence originally imposed by the District Court rather than the sentence imposed by the circuit court. The circuit court did not place the defendant on probation but directly imposed the prohibition against flying pursuant to the purported authority set forth in subsection (b) of § 10-1003. As explained above, I believe that this statutory provision is unconstitutional. However, the District Court had made the prohibition against operation of an aircraft a condition of probation. While it is true that criminal courts generally have wide discretion in imposing reasonable conditions of probation, it is recognized that the imposition of certain conditions is beyond the power of the courts. *See* Bird v. State, 231 Md. 432, 190 A. 2d 804 (1963); United States v. Pastore, 537 F. 2d 675 (2d Cir. 1976) (Lumbard, J., concurring); Best and Birzon, *Conditions of Probation*, 51 Geo. L. J. 809 (1963); Note, *Judicial Review of Probation Conditions*, 67 Colum. L. Rev. 181·(1967). It is doubtful whether a state imposed prohibition against operating an aircraft pursuant to a federal license, which could not be imposed directly as a sanction for violation of a criminal statute, could be imposed indirectly as a condition of probation. However, because we are reviewing the sentence of the circuit court following a *de novo* appeal instead of the sentence of the District Court, the question of whether or not a prohibition against operation of an aircraft could be imposed as a condition of probation is not presented.